NO.  2:08-cv-07871-PSG

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (LOS ANGELES)



FILED
CLERK, U.S. DISTRICT COURT

JUN 1 6 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

| In re: | District Court Case No. 2:08-cv-07871-PSG |
|---|---|
| KANG JIN HWANG, | |
| Debtor. | Bankruptcy Court Case No.. 2:08-bk-15337 SB |
| | On Appeal From a Decision By The United States Bankruptcy Court, Central District of California, Los Angeles Division, The Honorable Samuel L. Bufford, United States Bankruptcy Judge |

## APPELLANT FDIC'S APPENDIX

## AND EXCERPTS OF RECORD

MALCOLM ◆ CISNEROS
William G. Malcolm, #129271
Don Robinson, #123411
Kevin Hahn, #231579
MALCOLM • CISNEROS
2112 Business Center Drive, 2nd Floor
Irvine, California 92612
Telephone:  (949) 252-9400
Telecopier:  (949) 252-1032

Counsel for Appellant FDIC

NO.  2:08-cv-07871-PSG

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (LOS ANGELES)

In re:

KANG JIN HWANG,

              Debtor.

District Court Case No. 2:08-cv-07871-PSG

Bankruptcy Court Case No.. 2:08-bk-15337 SB

On Appeal From a Decision By The United States Bankruptcy Court, Central District of California, Los Angeles Division, The Honorable Samuel L. Bufford, United States Bankruptcy Judge

**APPELLANT FDIC'S APPENDIX**

**AND EXCERPTS OF RECORD**

MALCOLM ✦ CISNEROS
William G. Malcolm, #129271
Don Robinson, #123411
Kevin Hahn, #231579
MALCOLM • CISNEROS
2112 Business Center Drive, 2nd Floor
Irvine, California 92612
Telephone:  (949) 252-9400
Telecopier:  (949) 252-1032

Counsel for Appellant FDIC

NO.  2:08-cv-07871-PSG

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (LOS ANGELES)

| | |
|---|---|
| In re:<br><br>KANG JIN HWANG,<br><br>　　　　　　Debtor. | District Court Case No. 2:08-cv-07871-PSG<br><br>Bankruptcy Court Case No.. 2:08-bk-15337 SB<br><br>On Appeal From a Decision By The United States Bankruptcy Court, Central District of California, Los Angeles Division, The Honorable Samuel L. Bufford, United States Bankruptcy Judge |

## APPELLANT FDIC'S APPENDIX

## AND EXCERPTS OF RECORD

MALCOLM ◆ CISNEROS
William G. Malcolm, #129271
Don Robinson, #123411
Kevin Hahn, #231579
MALCOLM • CISNEROS
2112 Business Center Drive, 2nd Floor
Irvine, California 92612
Telephone:  (949) 252-9400
Telecopier:  (949) 252-1032

Counsel for Appellant FDIC

| EXH. | PAGE NO. | DOCKET NO. | DESCRIPTION | DATE FILED |
|------|----------|------------|-------------|------------|
| 1 | 1 | N.A. | Docket for Chapter 7 Bankruptcy Case No. 08-15337 SB and the following pleadings from that docket: | N.A. |
| 2 | 8 | 1 | Chapter 7 Voluntary Petition. Filed by Kang Jin Hwang.  Modified on 4/25/2008.  Additional attachment(s) added on 4/25/2008. | 04/22/08 |
| 3 | 11 | 8 | Notice of motion and motion for relief from the automatic stay with supporting declarations. Filed by Creditor IndyMac Bank. | 05/23/08 |
| 4 | 23 | 9 | Proof of service Amended Filed by Creditor IndyMac Bank (RE: related document(s)8 Notice of motion and motion for relief from the automatic stay). | 05/30/08 |
| 5 | 25 | 12 | Order for appearance of declarants to testify (movant: IndyMac Bank). | 06/10/08 |
| 6 | 28 | 15 | Order for appearance of declarants to testify (Movant: IndyMac Bank ). | 07/08/08 |
| 7 | 31 | 18 | Notice of Substitution of Movant on Motion for Relief from Automatic Stay. | 08/22/08 |
| 8 | 35 | 19 | Memorandum of points and authorities Supplemental in Support of Motion for Relief from Stay.  Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB. | 08/22/08 |
| 9 | 41 | 20 | Supplemental Declaration of Erica Johnson-Seck.  Filed by Creditor FDIC. | 08/22/08 |
| 10 | 46 | 21 | Executed Proof of Service Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB (RE: related document(s) 19). | 08/22/08 |
| 11 | 48 | 22 | Executed Proof of Service Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB (RE: related document(s)18). | 08/22/08 |

| EXH. FILED | PAGE NO. | DOCKET NO. | DESCRIPTION | DATE FILED |
|---|---|---|---|---|
| 12 | 50 | 23 | Order for appearance of declarants to testify (Movant: IndyMac Bank). | 09/08/09 |
| 13 | 53 | 24 | Judicial Opinion Denying Lift Stay for Failure to join real party in interest; Certificate of mailing; Signed on 9/4/2008. (Entered: 09/10/2008) | 09/04/08 |
| 14 | 64 | 26 | Memorandum of points and authorities in Support of IndyMac Federal Bank's Motion for Relief from Stay Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB. | 09/16/08 |
| 15 | 69 | 27 | Discharge of Debtor. | 09/24/08 |
| 16 | 71 | 29 | Order to IndyMac Federal Bank Pursuant to Rule 19; Certificate of mailing. | 10/10/08 |
| 17 | 74 | 30 | Response to Order to IndyMac Federal Bank Pursuant to Rule 19 Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB. | 10/20/08 |
| 18 | 78 | 31 | Judicial Opinion (AMENDED)Denying Relief from Automatic Stay | 10/29/08 |
| 19 | 91 | 32 | Order Denying Motion for relief from the automatic stay REAL PROPERTY.  Signed on 11/5/2008 (Entered: 11/05/2008) | 11/05/08 |
| 20 | 95 | 34 | Notice of Appeal - District Court. | 11/14/08 |
| 21 | 103 | 35 | Objection to Referral to Bankruptcy Appellant Panel Filed by Creditor FDIC as Conservator for IndyMac Federal Bank FSB. | 11/14/08 |
| 22 | 106 | N.A. | Transcript of hearings held on July 15, 2008 | |
| 23 | 126 | N.A | Transcript of hearings held on August 26, 2008 | |
| 24 | 132 | N.A. | Transcripts of hearings held on September 23, 2008. | |

1

Incomplete, APPEAL

## U.S. Bankruptcy Court
### Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:08-bk-15337-SB

*Date filed:*  04/22/2008
*Debtor discharged:*  09/24/2008

*Assigned to:* Samuel L. Bufford
Chapter 7
Voluntary
No asset

**Debtor**
**Kang Jin Hwang**
1635 4th Street
Los Angeles, CA 90019
SSN / ITIN: xxx-xx-8001

represented by **Robert K Lee**
3435 Wilshire Blvd Ste 2741
Los Angeles, CA 90010
213-384-6900
Fax : 213-384-6996
Email: admin@robertklee.com

**Trustee**
**Sam S Leslie**
Leslie, Engell & Associates LLP
6310 San Vicente Blvd., Suite 320
Los Angeles, CA 90048
(323) 549-6900

**U.S. Trustee**
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 04/22/2008 | 1 | Chapter 7 Voluntary Petition . Fee Amount $299 Filed by Kang Jin Hwang (Lee, Robert) CORRECTION: Deficient for Employee Income Record due 5/7/2008. Section 316 Incomplete Filings due by 6/9/2008. Incomplete Filings due 5/7/2008. Modified on 4/25/2008 (Mcguire, Debra). Additional attachment (s) added on 4/25/2008 (Mcguire, Debra). (Entered: 04/22/2008) |
| 04/22/2008 | | Receipt of Voluntary Petition (Chapter 7)(2:08-bk-15337) [misc,volp7] ( 299.00) Filing Fee. Receipt number 4734287. Fee amount 299.00. (U.S. Treasury) (Entered: 04/22/2008) |
| 04/22/2008 | 2 | Certificate of Credit Counseling Filed by Debtor Kang Jin Hwang. (Lee, Robert) (Entered: 04/22/2008) |

- 1 -

| 04/22/2008 | 3 | Meeting of Creditors with 341(a) meeting to be held on 05/23/2008 at 09:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 07/22/2008. (Lee, Robert) (Entered: 04/22/2008) |
| --- | --- | --- |
| 04/25/2008 | 4 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Mcguire, Debra) (Entered: 04/25/2008) |
| 04/27/2008 | 5 | BNC Certificate of Service (RE: related document(s) 3 , Meeting (Chapter 7)) No. of Notices: 11. Service Date 04/27/2008. (Admin.) (Entered: 04/27/2008) |
| 04/27/2008 | 6 | BNC Certificate of Service (RE: related document(s) 4 , Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 4. Service Date 04/27/2008. (Admin.) (Entered: 04/27/2008) |
| 04/29/2008 | 7 | Employee Income Records *Amended* Filed by Debtor Kang Jin Hwang (RE: related document(s) 1 , Voluntary Petition (Chapter 7)). (Lee, Robert) (Entered: 04/29/2008) |
| 05/23/2008 | 8 | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 501 Delamere Way, Las Vegas NV 89123 . Fee Amount $150, Filed by Creditor Indymac Bank (Attachments: # 1 Exhibit Legal Description# 2 Exhibit) (Malcolm, William) (Entered: 05/23/2008) |
| 05/23/2008 | | Receipt of Motion for Relief from Stay - Real Property(2:08-bk-15337-SB) [motion,nmrp] ( 150.00) Filing Fee. Receipt number 4987148. Fee amount 150.00. (U.S. Treasury) (Entered: 05/23/2008) |
| 05/27/2008 | | Hearing Set (RE: related document(s) 8 , Motion for Relief from Stay - Real Property filed by Creditor Indymac Bank) Hearing to be held on 6/24/2008 at 09:30 AM Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012 for 8 , (Garcia, Elaine L.) (Entered: 05/27/2008) |
| 05/30/2008 | 9 | Proof of service *Amended* Filed by Creditor Indymac Bank (RE: related document(s) 8 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 501 Delamere Way, Las Vegas NV 89123 . Fee Amount $150,). (Malcolm, William) (Entered: 05/30/2008) |
| 06/03/2008 | 10 | Financial Management Course Certificate Filed Filed by Debtor Kang Jin Hwang. (Lee, Robert) (Entered: 06/03/2008) |

- 2 -

| | | |
|---|---|---|
| 06/05/2008 | 11 | Meeting of Creditors Held and Concluded on 5/23/2008. Trustee's Report of No Assets: Trustee of this estate reports and declares under penalty of perjury that the section 341a Meeting of Creditors has been held and certifies that the trustee has performed the duties required of a trustee under 11 U.S.C. 704 and has concluded that there are no assets to administer for the benefit of creditors of this estate. The trustee received no funds or property of the estate and paid no monies on account of the estate. Wherefore, the trustee prays that this report be approved and the trustee be discharged from office. Notes: (Leslie, Sam) (Entered: 06/05/2008) |
| 06/10/2008 | 12 | Order for appearance of declarants to testify (movant: IndyMac Bank); Notice of entry; (Related Doc # ) Signed on 6/10/2008 (Garcia, Elaine L.) (Entered: 06/10/2008) |
| 06/12/2008 | 13 | BNC Certificate of Service - PDF Document. (RE: related document(s) 12 , Order (Generic)) No. of Notices: 6. Service Date 06/12/2008. (Admin.) (Entered: 06/12/2008) |
| 06/23/2008 | 14 | Notice *of Unavailability Of Witness with Proof of Service, (Related to Docket Entry Number 8, Motion for Relief from Automatic Stay)* Filed by Creditor Indymac Bank. (Malcolm, William) (Entered: 06/23/2008) |
| 06/26/2008 | | Hearing Continued (RE: related document(s) 8 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Indymac Bank) Hearing to be held on 07/15/2008 at 09:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 8 , (Garcia, Elaine L.) (Entered: 06/26/2008) |
| 07/08/2008 | 15 | Order for appearance of declarants to testify (Movant: IndyMac Bank ) (Related Doc # 8 ) Signed on 7/8/2008 (Garcia, Elaine L.) (Entered: 07/08/2008) |
| 07/10/2008 | 16 | BNC Certificate of Service - PDF Document. (RE: related document(s) 15 , Order (Generic)) No. of Notices: 6. Service Date 07/10/2008. (Admin.) (Entered: 07/10/2008) |
| 07/16/2008 | | Hearing Continued (RE: related document(s) 8 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Indymac Bank) Hearing to be held on 08/26/2008 at 09:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 8 , (Garcia, Elaine L.) (Entered: 07/16/2008) |
| 08/06/2008 | | Receipt of Tape Duplication Fee - $26.00 by WK. Receipt Number 20043300. (admin) (Entered: 08/08/2008) |

| | | |
|---|---|---|
| 08/14/2008 | <u>17</u> | Amended Schedule F Filed by Debtor Kang Jin Hwang. (Lee, Robert) (Entered: 08/14/2008) |
| 08/14/2008 | | Receipt of Schedule F - Creditors Holding Unsecured Nonpriority Claims(2:08-bk-15337-SB) [misc,schf] ( 26.00) Filing Fee. Receipt number 5629630. Fee amount 26.00. (U.S. Treasury) (Entered: 08/14/2008) |
| 08/22/2008 | <u>18</u> | Notice *of Substitution of Movant on Motion for Relief from Automatic Stay* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB. (Malcolm, William) (Entered: 08/22/2008) |
| 08/22/2008 | <u>19</u> | Memorandum of points and authorities *Supplemental in Support of Motion for Relief from Stay* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB. (Malcolm, William) (Entered: 08/22/2008) |
| 08/22/2008 | <u>20</u> | Declaration re: *Supplemental Declaration of Erica Johnson-Seck* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) <u>8</u> Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 501 Delamere Way, Las Vegas NV 89123 . Fee Amount $150,). (Malcolm, William) (Entered: 08/22/2008) |
| 08/22/2008 | <u>21</u> | Proof of service *Executed Proof of Service* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) <u>19</u> , Memorandum of points and authorities). (Malcolm, William) (Entered: 08/22/2008) |
| 08/22/2008 | <u>22</u> | Proof of service *Executed Proof of Service* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) <u>18</u> , Notice). (Malcolm, William) (Entered: 08/22/2008) |
| 09/02/2008 | | Hearing Continued (RE: related document(s) <u>8</u> MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Indymac Bank) Hearing to be held on 09/23/2008 at 09:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for <u>8</u> , (Garcia, Elaine L.) (Entered: 09/02/2008) |
| 09/04/2008 | <u>24</u> | Judicial Opinion Denying Lift Stay for Failure to join real party in interest; Certificate of mailing; Signed on 9/4/2008. (Garcia, Elaine L.) (Entered: 09/10/2008) |
| | | Order for appearance of declarants to testify (Movant: IndyMac Bank) relate entry #8 ; Signed on 9/8/2008 (Garcia, Elaine L.) |

| 09/08/2008 | 23 | (Entered: 09/08/2008) |
|---|---|---|
| 09/10/2008 | 25 | BNC Certificate of Service - PDF Document. (RE: related document(s) 23 , Order (Generic)) No. of Notices: 7. Service Date 09/10/2008. (Admin.) (Entered: 09/11/2008) |
| 09/11/2008 | | Receipt of Tape Duplication Fee - $26.00 by AP. Receipt Number 20044992. (admin) (Entered: 09/17/2008) |
| 09/16/2008 | 26 | Memorandum of points and authorities *in Support of Indymac Federal Bank's Motion for Relief from Stay* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB. (Malcolm, William) (Entered: 09/16/2008) |
| 09/24/2008 | 27 | DISCHARGE OF DEBTOR (BNC) (RE: related document(s) 3 , Meeting (Chapter 7)) (Lewis, Litaun) (Entered: 09/24/2008) |
| 09/26/2008 | 28 | BNC Certificate of Service (RE: related document(s) 27 , DISCHARGE OF DEBTOR - Chapter 7 (BNC)) No. of Notices: 16. Service Date 09/26/2008. (Admin.) (Entered: 09/26/2008) |
| 10/10/2008 | 29 | Order to Indymac Federal Bank Pursuant to Rule 19; Certificate of mailing Re: Signed on 10/10/2008. related entry 8 (Garcia, Elaine L.) (Entered: 10/10/2008) |
| 10/20/2008 | 30 | Declaration re: *Response to Order to IndyMac Federal Bank Pursuant to Rule 19* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) 29 , Order (Generic)). (Attachments: # 1 Proof of Service) (Malcolm, William) (Entered: 10/20/2008) |
| 10/29/2008 | 31 | Judicial Opinion (AMENDED)Denying Relief from Automatic Stay; Certificate of Mailing; Signed on 10/29/2008. related entry {24} (Garcia, Elaine L.) (Entered: 10/29/2008) |
| 11/05/2008 | 32 | Order Denying Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 8 ) Signed on 11/5/2008 (Garcia, Elaine L.) (Entered: 11/05/2008) |
| 11/07/2008 | 33 | BNC Certificate of Service - PDF Document. (RE: related document(s) 32 , Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 7. Service Date 11/07/2008. (Admin.) (Entered: 11/07/2008) |
| | | Notice of Appeal District Court. . Fee Amount $255 Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) 32 , Motion for relief from the |

| | | |
|---|---|---|
| 11/14/2008 | 34 | automatic stay REAL PROPERTY (BNC-PDF)). Appellant Designation due by 11/24/2008. (Malcolm, William) APPEAL CASE NUMBER IS CV08-7871-PSG; Modified on 12/9/2008 (Garcia, Elaine L.). (Entered: 11/14/2008) |
| 11/14/2008 | | Receipt of Notice of Appeal(2:08-bk-15337-SB) [appeal,ntcapl] ( 255.00) Filing Fee. Receipt number 6399839. Fee amount 255.00. (U.S. Treasury) (Entered: 11/14/2008) |
| 11/14/2008 | 35 | Objection to Referral to Bankruptcy Appellant Panel Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) 34 , Notice of Appeal). (Malcolm, William) (Entered: 11/14/2008) |
| 11/24/2008 | 36 | Notice of referral of appeal to U. S. District Court with certificate of mailing (RE: related document(s) 34 , Notice of Appeal filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB) (Garcia, Elaine L.) (Entered: 11/24/2008) |
| 11/24/2008 | 37 | Appellant Designation of Contents For Inclusion in Record On Appeal *and Statement of Issues Presented* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB (RE: related document(s) 34 , Notice of Appeal). Appellee designation due by 12/4/2008. Transmission of Designation Due by 12/24/2008. (Malcolm, William) (Entered: 11/24/2008) |
| 11/24/2008 | 38 | Notice of transcripts Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB. (Malcolm, William) (Entered: 11/24/2008) |
| 11/24/2008 | 39 | Transcript filed unredacted, for hearing date(s): July 15, 2008 *re: Notice of Motion and Motion For Relief From the Automatic Stay With Supporting Declarations* Filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB. (Malcolm, William) (Entered: 11/24/2008) |
| 12/01/2008 | 40 | Notice regarding appeal from Banruptcy Court Filed in the U.S.District court on 12/1/2008 APPEAL CV08-7871 PSG; related entry 34 (Garcia, Elaine L.) (Entered: 12/09/2008) |
| 03/24/2009 | 41 | Document re: Civil Minutes - General Filed by U.S. District Court (RE: related document(s) 34 Notice of Appeal filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB) (Lewis, Litaun) (Entered: 03/26/2009) |
| | | Certificate of readiness of record on appeal to District Court. Case Number: CV08-07871-PSG (RE: related document(s) 34 |

| 03/27/2009 | <u>42</u> | Notice of Appeal filed by Creditor FDIC as Conservator for Indymac Federal Bank FSB) (Garcia, Elaine L.) (Entered: 03/27/2009) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/03/2009 09:13:41 | | | |
| **PACER Login:** | mc0040 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:08-bk-15337-SB Fil or Ent: filed To: 6/3/2009 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

2

B1 (Official Form 1)(1/08)

| United States Bankruptcy Court<br>Central District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Hwang, Kang Jin** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**xxx-xx-8001** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**1635 4th Street**<br>**Los Angeles, CA**          ZIP Code **90019** | Street Address of Joint Debtor (No. and Street, City, and State):          ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Los Angeles** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):          ZIP Code | Mailing Address of Joint Debtor (if different from street address):          ZIP Code |

Location of Principal Assets of Business Debtor (if different from street address above):

**Type of Debtor** (Form of Organization) (Check one box)
- ■ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business** (Check one box)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Other

**Tax-Exempt Entity** (Check box, if applicable)
- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)
- ■ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)
- ■ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☐ Debts are primarily business debts.

**Filing Fee** (Check one box)
- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ■ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ■ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

- 8 -

B1 (Official Form 1)(1/08)
Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>*Hwang, Kang Jin* |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location<br>Where Filed:  *- None -* | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>*- None -* | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A**<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X  */s/ Robert K. Lee*     **April 22, 2008**<br>   Signature of Attorney for Debtor(s)        (Date)<br>   **Robert K. Lee 150358** |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(1/08)                                                                                    Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | ***Hwang, Kang Jin*** |

<strong>Signatures</strong>

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  ***/s/ Kang Jin Hwang***
Signature of Debtor   ***Kang Jin Hwang***

X
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

***April 22, 2008***
Date

### Signature of Attorney*

X  ***/s/ Robert K. Lee***
Signature of Attorney for Debtor(s)

***Robert K. Lee 150358***
Printed Name of Attorney for Debtor(s)

***Law Offices of Robert K. Lee***
Firm Name

***3435 Wilshire Blvd., Suite 2741***
***Los Angeles, CA 90010***

Address

***Email: admin@robertklee.com***
***213.384.6900  Fax: 213.384.6996***
Telephone Number

***April 22, 2008***            ***150358***
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X
Signature of Foreign Representative

Printed Name of Foreign Representative

Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

Printed Name and title, if any, of Bankruptcy Petition Preparer

Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

Address

X

Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

3

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| WILLIAM G. MALCOLM, #129271<br>KEVIN HAHN, #231579<br>MALCOLM ♦ CISNEROS, A Law Corporation<br>2112 Business Center Drive, Second Floor<br>Irvine, California  92612<br>(949) 252-9400 (TELEPHONE)<br>(949) 252-1032 (FACSIMILE)<br><br>☒ *Attorney for:*   **INDYMAC BANK,** | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:  **KANG JIM HWANG,** | **CHAPTER:**   7 |
|---|---|
| | **CASE NO.:**   **2:08-BK-15337-SB** |

| **INDYMAC BANK,**<br><br>Movant(s).<br>vs.<br><br>**KANG JIM HWANG, Debtor and Sam S. Leslie, Trustee,**<br><br>Debtor(s). | **DATE:**   **June 24, 2008**<br><br>**TIME:**   **9:30 a.m.**<br><br>**CTRM:**   **1575**<br><br>**FLOOR:**   **15TH** |
|---|---|

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**UNDER 11 U.S.C. § 362 (with supporting declarations)**
**(MOVANT: <u>INDYMAC BANK,</u>)**
**(Real Property)**

1.  NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any) ("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s) bankruptcy estate on the grounds set forth in the attached Motion.

2.  **Hearing Location:**   ☒ **255 East Temple Street, Los Angeles**      ☐ **411 West Fourth Street, Santa Ana**
     ☐ **21041 Burbank Boulevard, Woodland Hills**      ☐ **1415 State Street, Santa Barbara**
     ☐ **3420 Twelfth Street, Riverside**

3.  a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1.  If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

    b.  ☐  This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any ~~written response or evidence may be filed and served:~~

        ☐ at the hearing    ☐ at least _____ court days before the hearing.

        (1)  ☐  An Application for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

        (2)  ☐  An Application for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

        (3)  ☐  A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.  You may contact the Bankruptcy Clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form F 4001-1M.RES*), or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of 11*      F 4001-1M.RP

| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: **2:08-BK-15337-SB** |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: **May 23, 2008**

MALCOLM ♦ CISNEROS, A Law Corporation
*Print Law Firm Name (if applicable)*

WILLIAM G. MALCOLM
*Print Name of Individual Movant or Attorney for Movant*
EFP/IMB/18081

*/s/ William G. Malcolm*
*Signature of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

F 4001-1M.RP

| | | |
|---|---|---|
| Motion for Relief from Stay (Real Property) - *Page 3 of 11* | | **F 4001-1M.RP** |
| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER: 7 |
| | Debtor(s). | CASE NO.: **2:08-BK-15337-SB** |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## (MOVANT: INDYMAC BANK)

1. **The Property at issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   Street Address:      **501 Delamere Way**
   Apartment/Suite no.:
   City, State, Zip Code:    **Las Vegas NV 89123**

   Legal description or document recording number (including county of recording):

      ☒ See attached continuation page. (**See** Exhibit "1" attached hereto.)

2. **Case History:**

   a. ☒ A voluntary ☐ An involuntary    petition under Chapter    ☒ 7   ☐ 11   ☐ 12   ☐ 13
        was filed on *(specify date)*: **04/22/08**

   b. ☐ An Order of Conversion to Chapter    ☐ 7   ☐ 11   ☐ 12   ☐ 13
        was entered on *(specify date)*:

   c. ☐ Plan was confirmed on *(specify date)*:

   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See Attached Declaration.

3. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

       (1) ☒ Movant's interest in the Property is not adequately protected.

           (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.

           (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

           (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

           (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.

       (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

           (a) ☐ Movant is the only creditor or one of the very few creditors listed on the mater mailing matrix.

           (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

           (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.

           (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 4 of 11*        **F 4001-1M.RP**

| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.:   **2:08-BK-15337-SB** |

      (3)  ☐  *(Chapter 12 or 13 cases only)*

          (a)  ☐  Post-confirmation plan payments have not been made to the Standing Trustee.

          (b)  ☐  Post-confirmation payments required by the confirmed plan have not been made to Movant.

      (4)  ☒  For other cause for relief from stay, see attached continuation page.

          **It is the Debtor's intention to surrender the Property as stated in his Statement of Intentions.**

b.  ☒  Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to §362(d)(2)(B), the Property is not necessary for an effective reorganization.

c.  ☐  Pursuant to 11 U.S.C. §362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan or reorganization or to commence monthly payments.

d.  ☐  Pursuant to 11 U.S.C. §362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

      (1)  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

      (2)  ☐  Multiple bankruptcy filings affecting the Property.

4.  ☐  Movant also seeks annulment of the stay to validate post-petition acts, as specified in the attached declaration(s).

5.  **Evidence in Support of Motion:**   *(Important Note:  Declaration(s) in support of the Motion MUST be attached hereto.)*

a.  ☒  Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b.  ☐  Movant submits the attached supplemental Declaration(s) under penalty of perjury, to provide additional admissible evidence in support of this Motion.

c.  ☒  Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claim and the Property set forth in Debtor(s)'s Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as **Exhibit "4."**

d.  ☒  Other evidence *(specify)*:  **Movant submits the Assignment of Deed of Trust as Exhibit "3."**

6.  ☐  **An optional Memorandum of Points and Authorities is attached to this Motion.**


**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1.  Relief from the Stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.  ☐  Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3.  ☒  Additional provisions requested:

      a.  ☒  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

      b.  ☒  That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

      c.  ☐  That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-M.ER)*.

      d.  ☐  For other relief requested, see attached continuation page.

(Continued on next page)

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                             **F 4001-1M.RP**

| In re              (SHORT TITLE) | CHAPTER:  7 |
|---|---|
| **KANG JIM HWANG,** | |
| Debtor(s). | CASE NO.:  **2:08-BK-15337-SB** |

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.


Dated:    **May 23, 2008**                      Respectfully submitted,

                                                                **INDYMAC BANK**
                                                                *Movant Name*


                                                                <u>**MALCOLM ◆ CISNEROS**, A Law Corporation</u>
                                                                *Firm Name of Attorney for Movant (if applicable)*


                                                                By:  <u>*/s/ William G. Malcolm*</u>
                                                                       *Signature*

                                                                Name:   <u>WILLIAM G. MALCOLM</u>
                                                                         *Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                      **F 4001-1M.RP**

- 15 -

**F 4001-1M.RP**

| | | |
|---|---|---|
| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER:  7 |
| | Debtor(s). | CASE NO.:  **2:08-BK-15337-SB** |

## REAL PROPERTY DECLARATION
## <u>(MOVANT: INDYMAC BANK FSB)</u>

I, ERICA A. JOHNSON-SECT, declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property that is the subject of this Motion ("Property) because *(specify)*:

    ☐  I am the Movant and owner of the Property.

    ☐  I manage the Property as the authorized agent for the Movant.

    ☒  I am employed by Movant as *(state title and capacity):*  **Vice-President**

    ☐  Other *(specify):*

2.  I am one of the custodians of the books, records and files of Movant that pertain pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the Court if required.

3.  a.  The address of the real property that is the subject of this Motion is:

    | | |
    |---|---|
    | *Street Address:* | **501 Delamere Way** |
    | *Apartment/Suite no.:* | |
    | *City, State, Zip Code:* | **Las Vegas NV 89123** |

    b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as <u>**Exhibit "1"**</u>.

    ☒  See attached page.

4.  Type of property: *(Check all applicable boxes)*

    a.  ☐  Debtor's(s') principal residence      b.  ☒  Other single family residence

    c.  ☐  Multi-unit residential               d.  ☐  Commercial

    e.  ☐  Industrial                           f.  ☐  Vacant land

    g.  ☐  Other *(specify):*

*(Continued on next page)*

Loan No. /File No. 18081

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                                   **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 7 of 11*          **F 4001-1M.RP**

| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER: **7** |
|---|---|---|
| | Debtor(s). | CASE NO.: **2:08-BK-15337-SB** |

5.  Nature of Debtor's interest in the Property:
    a.  ☒ Sole owner:
    b.  ☐ Co-owner(s) *(specify)*:
    c.  ☐ Lien holder *(specify)*:
    d.  ☐ Other *(specify)*:
    e.  ☒ Debtor(s)   ☒ did   ☐ did not   list the Property in the Schedules filed in this case.
    f.  ☐ Debtor(s) acquired the interest in the Property by   ☐ grant deed   ☐ quitclaim deed   ☐ trust deed

    The deed was recorded on:

6.  Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $375,762.73 |
| b. | Accrued Interest: | $ | $ | $21,286.27 |
| c. | Late Charges | $ | $ | $968.76 |
| d. | Costs (Attorney's Fees, Other Costs): | $ | $ | $4,285.76 |
| e. | Advances (Property Taxes, Insurance): | $ | $ | $1,852.38 |
| f. | TOTAL CLAIM as of April 28, 2008: | $ | $ | $404,155.90 |
| g. | ☐ Loan is all due and payable because it matured on (specify date): | | | |

7.  Movant holds a   ☒ deed of trust   ☐ judgment lien   ☐ other *(specify)*
    that encumbers the Property.

    a.  A true and correct copy of the document as recorded is attached as **Exhibit "1."**
    b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as **Exhibit "2."**
    c.  ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as **Exhibit "3."**

8.  Status of Movant's claim relating to the Property   *(fill in all applicable information requested below)*:

    a.  Current interest rate: **6.875%**
    b.  Contractual maturity date: **February 1, 2037**
    c.  Amount of current monthly payment: **$2,474.34**
    d.  Number of PREPETITION payments that have come due and were not made: **9**  Total Amount: **$23,237.82**
    e.  Number of POST-PETITION payments that have come due and were not made: **0**   Total Amount: **$0**
    f.  Date of POST-PETITION default: **N/A**
    g.  Last payment received on the following date:   **June 25, 2007**
    h.  Notice of default recorded on the following date: **December 5, 2007**
    I.  Notice of sale recorded on the following date: **March 6, 2008**
    j.  Foreclosure sale originally scheduled for the following date: **March 26,  2008**
    k.  Foreclosure sale currently scheduled for the following date: **N/A**
    l.  Foreclosure sale already held on the following date: **N/A**
    m.  Trustee's deed on sale already recorded on the following date: **N/A**
    n.  Future payments due by time of anticipated hearing date *(if applicable)*:
        An additional payment of **$2,474.34** will come due on **May 1, 2008** and on the **1st** day of each month thereafter.   If the payment is not received by the **16th** day of the month, a late charge of **$ 107.64** will be charged to the loan.

9.  Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION payment history that accurately reflects the dates and amounts of all payments made by the Debtor(s) since the petition date.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                         **F 4001-1M.RP**

| In re<br>KANG JIM HWANG, | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: **2:08-BK-15337-SB** |

10. ☒ *(Chapter 7 and 11 cases only):* The fair market value of the entire Property is $**358,000.00** established by:

    a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.

    b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

    c. ☒ A true and correct copy of relevant portion(s) of Debtor's Schedules attached as **Exhibit "4."**

    d. ☐ Other *(specify):*

11. ☐ The fair market value of the Property is declining based on/due to:_____

_____

12. ☒ **Calculation of equity in Property**

    a. Based upon ☐ a preliminary title report   ☒ Debtor's(s') admissions in the schedules filed in this case, subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (If any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | **INDYMAC BANK** | $375,762.00 | $404,155.90 |
| 2nd Deed of Trust: | **GMAC MORTGAGE** | | $102,159.00 |
| 3rd Deed of Trust | | | 0.00 |
| Judgment Liens: | | | 0.00 |
| Taxes: | | | 0.00 |
| Other: | **Costs of Sales** | | $28,640.00 |
| **TOTAL DEBT:** | | | $534,954.90 |

    b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as **Exhibit"4"** and consists of:

        ☐ Preliminary title report

        ☒ Relevant portions of Debtor(s)'s Schedules as filed in this case

        ☐ Other *(specify):*

    c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor(s)'s equity in the Property is **$-176,954.90** (§362(d)(2)(A)).

    d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is **$-46,155.90** §362(d)(1)).

    e. Estimated costs of sale: $**28,640.00**  (Estimate based upon **8%** of estimated fair market value).

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

    a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
       Confirmation hearing currently scheduled for (or concluded on) the following date:
       Plan confirmed on the following date:

    b. Postpetition/preconfirmation payments BUT REMAINING UNPAID since the filing of the case:

| | | | | | | |
|---|---|---|---|---|---|---|
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at  $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at  $ _____ | each | = | $ _____ |

*(Continued on next page)*

_____

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

| In re<br>**KANG JIM HWANG,** | (SHORT TITLE) | CHAPTER:  **7** |
|---|---|---|
| | Debtor(s). | CASE NO.:  **2:08-BK-15337-SB** |

c.  Postpetition/preconfirmation advances or other charges due but unpaid:  $ _____
     (See attachment for details of types and amount)

     **TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**  $ _____

d.  Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

| | | | | | | |
|---|---|---|---|---|---|---|
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at  $ _____ | each | = | $ _____ |
| *(Number of)* _____ | late charge(s) at  $ _____ | each | = | $ _____ |
| | | | | $ _____ |

e.  Postconfirmation advances or other charges due but unpaid:
     (See attachment for details of types and amount)

     **TOTAL POSTCONFIRMATION DELINQUENCY:**  $ _____

f.  ☐  The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.  ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(Attach Court Form F 4001-1M.13).*

14.  ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15.  ☐  The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or the Debtor(s) has/have not commenced the monthly payments to Movant as required by 11 U.S.C §362(d)(3).

16.  ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17.  ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

a.  ☐  The Transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b.  ☐  Multiple bankruptcy filing affecting the Property.  The multiple bankruptcy filings include the following cases:
    1.  Case Name:
        Case Number:                          Chapter:
        Date Filed:                           Date Dismissed:              Date Discharged:
        Relief from stay re this property ☐ was  ☐ was not  granted.
    2.  Case Name:
        Case Number:                          Chapter :
        Date Filed:                           Date Dismissed:              Date Discharged:
        Relief from stay re this property ☐ was  ☐ was not  granted.
    3.  ☐  See attached continuation page for more information about other cases.

☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page* 10 of 11   **F 4001-1M.RP**

| In re                         | (SHORT TITLE)      | CHAPTER: 7                    |
|-------------------------------|--------------------|-------------------------------|
| KANG JIM HWANG,               |                    |                               |
|                               | Debtor(s).         | CASE NO.: 2:08-BK-15337-SB    |

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

   a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on May 1, 2008, at _Austin, TX_ .

13

INDYMAC BANK FSB

_Ericca A. Johnson-Seal_
_Signature of Declarant_

_Ericca A. Johnson-Seal_

_Vice President_
_Title_

Loan No.
EFP/IMB/18081

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*                                    **F 4001-1M.RP**

- 20 -

| In re                     | (SHORT TITLE)      |             | CHAPTER: 7                 |
|---------------------------|--------------------|-------------|----------------------------|
| KANG JIM HWANG,           |                    | Debtor(s).  | CASE NO.: 2:08-BK-15337-SB |

## PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF **ORANGE**

1.  I am over the age of 18 and not a party to the within action.  My business address is as follows:
    **2112 Business Center Drive**
    **Second Floor**
    **Irvine, California  92612**

2.  **Regular Mail Service:** On **May 23, 2008**, pursuant to Local Bankruptcy Rule 9013-1, I served the documents described as: NOTICE OF MOTION and MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at Irvine, California, addressed as set forth on the attached list.

    > *Note: If the Notice and Motion have been served pursuant to an Order Shortening Time ("Order"), you must file a Proof of Service that indicates that the notice and service requirements contained in the Order have been met.*

3.  **See attached list for names and addresses of all parties and counsel that have been served** *(In the manner set forth in Local Bankruptcy Rule 7004-1(b), specify capacity in which service is made; e.g., Debtor, Debtor's Attorney, Trustee, Trustee's Attorney, Creditors Committee or 20 largest unsecured creditors, etc.)*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  **May 23, 2008**

_____
ERICA F. PEDRAZA
*Typed Name*

_____
*Signature*

*Revised October 2005*

SERVICE LIST
KANG JIM HWANG
CASE NO. 2:08-BK-15337-SB

**DEBTOR:**
KANG JIM HWANG
1635 4th Street
Los Angeles CA 90019

**DEBTOR'S ATTORNEY:**
Robert K. Lee
3435 Wilshire Blvd, Ste 2741
Los Angeles CA 90010

**CHAPTER 7 TRUSTEE:**
Sam S. Leslie
Leslie Engell & Associates LLP
6310 San Vicente Blvd, Ste 320
Los Angeles CA 90048

**OFFICE OF THE US TRUSTEE:**
Office of the U.S. Trustee
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

- 22 -

EFP\IMB\18081

Loan No.

20070201-0004035

Fee: $42.00
N/C Fee: $0.00

02/01/2007          14:47:25
T20070019183
Requestor:
  MERCURY TRANSACTION SERVICES

Debbie Conway          SOL
Clark County Recorder   Pgs: 29

Assessor's Parcel Number:
177-22-116-057
Return To:
MORTGAGEIT

1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI  53562

Prepared By:

Recording Requested By:
MORTGAGEIT

—————————————— [Space Above This Line For Recording Data] ——————————————

0 30 04 020 - CPY DEED OF TRUST

LOAN NO.: 40753198                        MIN  100112065737668570
ESCROW NO.: FTCN03004020                  MERS Phone: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated          JANUARY 25, 2007
together with all Riders to this document.
(B) "Borrower" is
KANG JIN HWANG, A SINGLE MAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK

NEVADA-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT        Form 3029  1/01
WITH MERS
V-6A(NV) (0510)          Page 1 of 15        LENDER SUPPORT SYSTEMS INC. MERS6ANV.NEW (04/06)

Lender's address is
33 MAIDEN LANE 6TH FLOOR, NEW YORK, NY 10038-

(D) "Trustee" is
FINANCIAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated      JANUARY 25, 2007
The Note states that Borrower owes Lender

THREE HUNDRED SEVENTY SIX THOUSAND AND NO/100 X X X X X X X X X X X X X X
                                                                             Dollars

(U.S. $      376,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      FEBRUARY 01, 2037      .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | | | |
|---|---|---|---|---|---|
| [XX] Adjustable Rate Rider | | [ ] Condominium Rider | | [ ] 1-4 Family Rider | |
| [ ] Graduated Payment Rider | | [XX] Planned Unit Development Rider | | [ ] Biweekly Payment Rider | |
| [ ] Balloon Rider | | [ ] Rate Improvement Rider | | [ ] Second Home Rider | |
| [XX] Other(s) [specify] | | PREPAYMENT RIDER | | | |

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
ADDENDUM TO ADJUSTABLE RATE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: HK

V-6A(NV) (0510)                     Page 2 of 15                     Form 3029  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          COUNTY              [Type of Recording Jurisdiction]
of                        CLARK                    [Name of Recording Jurisdiction]:

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 177-22-116-057                         which currently has the address of
                        501 DELAMERE WAY                                      [Street]
            LAS VEGAS            [City], Nevada        89123    [Zip Code]
("Property Address"):
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: HK

V-6A(NV) (0510)              Page 3 of 15              Form 3029  1/01

20-3

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM   COVENANTS.   Borrower   and   Lender   covenant   and   agree   as   follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives

Initials: HKJ

V-6A(NV) (0510)                   Page 4 of 15                   Form 3029   1/01

Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: ___

V-6A(NV) (0510)                    Page 5 of 15                    Form 3029  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

V-6A(NV) (0510)                    Page 7 of 15                    Form 3029   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: N.K.

V-6A(NV) (0510)                    Page 8 of 15                    Form 3029  1/01

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: HKJ

V-6A(NV) (0510)                      Page 9 of 15                      Form 3029  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: HK

V-6A(NV) (0510)                    Page 10 of 15                    Form 3029  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

Initials: _____

V-6A(NV) (0510)                     Page 11 of 15                     Form 3029  1/01

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: M.K.S

V-6A(NV) (0510)                    Page 12 of 15                    Form 3029   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 125.00

Initials: H.Y.

V-6A(NV) (0510)          Page 13 of 15          Form 3029   1/01

20-13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ -Witness

_____ -Witness

_____(Seal)    _____(Seal)
KANG JIN HWANG          -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

V-6A(NV) (0510)          Page 14 of 15          Form 3029  1/01

STATE OF ~~NEVADA~~ CALIFORNIA
COUNTY OF LOS ANGELES

This instrument was acknowledged before me on     1-27-2007          by
KANG JIN HWANG

P.J. MORENO
Comm. No.1434007
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. August 7, 2007

Mail Tax Statements To:

MORTGAGEIT, INC.

8329 WEST SUNSET ROAD #200
LAS VEGAS, NV 89113-

V-6A(NV) (0510)                    Page 15 of 15               Initials: H. K. T
                                                               Form 3029  1/01

SEE "PREPAYMENT NOTE ADDENDUM" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "INTEREST-ONLY ADD. TO ARM NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN 100112065737668570
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE

LOAN NO.:  40753198

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JANUARY 25, 2007 | LAS VEGAS | NEVADA |
|---|---|---|
| [Date] | [City] | [State] |

501 DELAMERE WAY, LAS VEGAS, NV 89123
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      376,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.875      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on      MARCH, 2007      .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      FEBRUARY 01, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  GMAC MORTGAGE, LLC
P.O. BOX 780, WATERLOO, IA 50704-0780
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $      2,470.05      . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

Initials: H.K.
Form 3520 1/01

V-838N (0210).01                    Page 1 of 4                    LENDER SUPPORT SYSTEMS INC. 838NXX.NEW (09/06)

20-16



**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A) Change Dates

   The interest rate I will pay may change on the first day of          FEBRUARY, 2012          , and on that day every
   6th     ·  month thereafter. Each·date on which my interest rate could change is called a "Change Date."

   (B) The Index

   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in
*The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

   (C) Calculation of Changes

   Before each Change Date, the Note Holder will calculate my new interest rate by adding
       TWO  AND ONE QUARTER                        percentage points (         2.250             %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next
Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially-
equal payments. The result of this calculation will be the new amount of my monthly payment.

   (D) Limits on Interest Rate Changes

   The interest rate I am required to pay at the first Change Date will not be greater than          12.875          %
or less than        2.250               %. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than        TWO  AND 000/1000THS         percentage point(s) (        2.000           %)
from the rate of interest I have been paying for the preceding        6        months. My interest rate will never be greater
than         12.875        % .

   (E) Effective Date of Changes

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   (F) Notice of Changes

   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly
payment before the effective date of any change. The notice will include information required by law to be given to me and
also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not
designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the
Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly
payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my
monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial
Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be·collected in connection with this loan exceed the permitted limits, then: (a) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already
collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the
reduction will be treated as a partial Prepayment.

Initials: H.K - J

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000           % of my overdue payment of principal and interest. I will pay this late charge promptly but
only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by
a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and
all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to
me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right
to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.
Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the
Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note
will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different
address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made
in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this
Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a
guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder
may enforce its rights under this Note against each person individually or against all of us together. This means that any one
of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means
the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to
the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same
date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in
this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment
in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials: HK-J

V-838N (0210).01                                    Page 3 of 4                                    Form 3520 1/01

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
KANG JIN HWANG            -Borrower                                  -Borrower

                                    Pay To The Order Of

_____ (Seal)          _____ (Seal)
                          -Borrower       Without Recourse            -Borrower
                                          IndyMac Bank, F.S.B.

                                          By: _____

_____ (Seal)          Brian Brouillard           _____ (Seal)
                          -Borrower       First Vice President        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                   -Borrower

Pay to the order of: IndyMac Bank F.S.B
Without Resource                [Sign Original Only]
Mortgageit, Inc.
By: _____
Name: __Stacy Asher__
Its: __Assistant Secretary__



## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

MIN: 100112065737668570
MERS Phone: 1-888-679-6377

LOAN NUMBER:  40753198

PROPERTY ADDRESS:  501 DELAMERE WAY, LAS VEGAS, NV  89123

THIS ADDENDUM is made this    25th    day of        JANUARY, 2007        , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to
MORTGAGEIT, INC.

(the "Lender").

THIS ADDENDUM supersedes Section 3(A), 3(B), 4(C) AND 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

3.      PAYMENTS

        (A)      Time and Place of Payments
               I will pay interest by making payments every month for the first   120   payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next   240   payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

               I will make my monthly payments on the   1st   day of each month beginning on
MARCH, 2007             .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on
FEBRUARY 01, 2037             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

               I will make my payments at
P.O. BOX 780, WATERLOO, IA  50704-0780
or at a different place if required by the Note Holder.

        (B)      Amount of My Initial Monthly Payments
               My initial monthly payments will be in the amount of U.S. $ 2,154.17         .  This payment amount is based on the original principal balance of the Note.  This payment amount may change.

Initials: H. K - J

Form 603E                          Page 1 of 2             LENDER SUPPORT SYSTEMS INC. AURIONTE.ADD (08/04)