is anyone who is entitled to express a view with respect to a matter before the court.

In contrast, a "real party in interest" is a far narrower group, and is usually limited to a single party. The real party in interest is "the person who, according to the governing substantive law, is entitled to enforce the right."

It is also important to distinguish the "real party in interest" requirement from standing. Standing is constitutional requirement, grounded in Article III.[5] The "real party in interest" requirement, on the other hand, is generally regarded as one of many "prudential" considerations that have been "judicially engrafted onto the Article III requirements for standing." See, e.g., In re Village Rathskeller, 147 B.R.

665, at 668 (Bankr. S.D.N.Y. 1992).[6] To seek relief in federal court, a party "must meet both constitutional and prudential . . . requirements." Morrow v. Microsoft Corp. 499 F.3d 1332, 1339 (9th Cir. 2007); see also In re Village Rathskeller, Inc., 147 B.R. at 668 (citing Warth v. Seldin, 422 U.S. 490, 498 (1975) for the proposition that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations"). To satisfy one does not necessarily mean that the other is satisfied: a party may have standing – having suffered an "injury in fact" – but this may not make it the real party in interest. See, e.g., Whelan v. Abell, 953 F.2d 663, 672 (D.C. Dir. 1992). Conversely, a party may be the real party in interest, but lack standing. See, e.g., Davis v. Yageo Corp., 481 F.3d 661 (9th Cir. 2007).

---

[5] "Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 484, (1982); see also Morrow v. Microsoft Corp. 499 F.3d 1332, 1339 (9th Cir. 2007). This constitutional restriction is enforced by the minimum requirement that a "party who invokes the court's authority...show that he suffered some actual or threatened injury," Matter of Village Rathskeller, Inc., 147 B.R. at 668 (citing Valley Forge, 454 U.S. at 464), that the injury be "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Morrow, 499 F.3d at 1339 (citing Hein v. Freedom Religion Found., Inc., --- U.S. ---, 127 S.Ct. 2553, 2555-56, 168 L.Ed.2d 424 (2007)). "These requirements have been described as the injury in fact, traceability, and redressability inquiries." Id. "An actual or threatened injury exists when a party's pecuniary interest may be affected by the outcome of a determination." Matter of Village Rathskeller, 147 B.R. at 668 (citing United States v. Little Joe Trawlers, Inc., 780 F.2d 158, 161 (1st Cir. 1986).

[6] Of these considerations, two are of particular relevance to a party who invokes a court's authority to grant relief from the automatic stay under 11 U.S.C. § 362(d). See id. at 668-69. First, the party seeking relief "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Valley Forge, 454 U.S. at 760 (citing Warth v. Seldin, 422 U.S. 490, 501 (1975); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 80 (1978); Singleton v. Wulff, 428 U.S. 106, 113-114 (1976)). Second, "the plaintiff's complaint [must] fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Valley Forge, 454 U.S. at 475 (citing Association of Data Processing Service Orgs. v. Camp, 397 U.S. 150, 153 (1970); Gladstone, 441 U.S. at 100; Duke Power Co., 438 U.S. at 80). Both of these considerations are incorporated into Rule 17's requirement that an action be prosecuted "in the name of the real party in interest." See Ensley v. Cody Resources, Inc., 171 F.3d 315, 320 (5th Cir. 1999).

4

## B. The Right to Enforce a Note and Mortgage

Since the "real party in interest" is that party with the right to enforce a claim under the applicable substantive law, it is to that law that we must now turn. In particular, since a party that seeks relief under § 362(d) does so in order to enforce rights that have been stayed by § 362(a), it is also necessary to consider the substantive law that underlies those rights. This means that for relief from stay motions based on a promissory note, the court must look to the substantive law that governs promissory notes.

### 1. Who May Enforce the Note

The court assumes without deciding that the note here at issue is a negotiable instrument, as defined in California Commercial Code ("CCC") § 3104(a), (b) and (e). It is on a standard printed form that is used in the finance industry for notes that are freely bought and sold in a manner inconsistent with treating it as a non-negotiable note. In California, the substantive law that governs negotiable instruments, such as promissory notes, is CCC Article 3. See id. § 3-102(a).

It is important to distinguish between the "holder" of a note and the possessor of a note. A note may be in the possession of an agent, who has possession on behalf of a principal. For example, where an officer of a bank is in possession of a note on behalf of the bank, the bank is the holder of the note notwithstanding the possession by the officer.

In this case, IndyMac Federal is in possession of the note, and produced the original of the note at trial. Nonetheless, according to the testimony at trial, IndyMac Federal is the loan servicing agent for Freddie Mac, the owner, and thus the holder, of the note. IndyMac's

possession of the note is the same as a bank officer's possession – it is on behalf of Freddie Mac, the owner of the note and its real holder.

The only person entitled to enforce a note (with minor exceptions not relevant to this case) is the "holder" of the note. See CCC § 3-301(a). Thus, the real party in interest rule requires the holder of the note to bring the motion for relief from stay.

Transfer of the note bears with it the right to enforce the note. Indeed, unlike the ownership of contractual obligations – which can generally be transferred by an assignment – the right of enforcement for a negotiable instrument is only transferable by delivery of the instrument itself. § 3-203. This follows from the principle that only the holder of a note is entitled to enforce the note.

### 2. The Mortgage Follows the Note

In the real estate context, it is typical for a promissory note to be secured by a mortgage on real property. The security is carried by a separate instrument – either a mortgage or, in California and some other states, a deed of trust – which must be recorded in the county records. The note represents the borrower's obligation on the debt, while the mortgage or deed of trust represents the security. The latter offers its bearer legal remedies in the event of default, while the former offers equitable remedies against the property. The two together may be referred to as a "mortgage loan."

In the primary mortgage market, a lender originates a loan to a borrower, who in turn issues the lender a note and deed of trust. This is the scenario in which the governing law developed, but is has become increasingly rare. More often now, the primary mortgage market gives way almost immediately to what is commonly termed the secondary mortgage market, in which the lender –

5

- 57 -

having completed the primary transaction – immediately sells the loan to an investor. (Even more complex and sophisticated arrangements involve the pooling of loans into portfolios which are then securitized to form Mortgage Backed Securities – an alchemy that is little understood by the general public, much less the wizards who practice it these days, and which need not concern us here.)

Notes traded on the secondary mortgage market remain secured because the mortgage follows the note. Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security"). California codified this principle in 1872, and this has long been the law in all the United States, too: when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." Carpenter v. Longan, 83 U.S. 271, 275 (1872). This is an equitable principle, in that "if [the security is] not assignable at law, it is clearly so in equity." Id. Clearly, the objective of this principle is "to keep the obligation and the mortgage in the same hands unless the parties wish to separate them." Restatement (Third) of Property (Mortgages) § 5.4 (1997). The principle is justified, in turn, by reasoning that the "the debt is the principal thing and the mortgage an accessory." Id. Consequently, "[e]quity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both." Id. [7]

### 3. The Mortgage Cannot Be Separated From the Note

Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned long ago that as a corollary, "the mortgage can have no separate existence." Carpenter, 83 U.S. at 274. (Hence the legal maxim cited by the Court: *accessorium non ducit, sequitur principalem,*[8] the accessory does not lead, but rather follows the principal. Id. at 276.) In arriving at this conclusion, the Court observed that "there is considerable discrepancy in the authorities," and cited from among these one holding of the Supreme Court of Ohio – "a case marked by great ability and fulness of research" – in which the Ohio court held that while notes are made negotiable by statute, "there is no such statutory provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original

---

[7] Some authorities have followed a similar rationale in holding that the transfer of the mortgage likewise transfers the obligation which it secures, if a court can infer the intent to keep the mortgage and the note together. See Restatement (Third) of Property (Mortgages) § 5.4 (1997). These authorities, however, predate the adoption of the Uniform

Commercial Code in all fifty of the United States. Today, courts that would otherwise be inclined to follow this inverse rule will likely be forced to disregard it if they are to give effect to UCC §§ 3-203, 3-301(a). This is because mortgage obligations are almost universally negotiable notes, whose right of enforcement is available only to the holder, and only transferable by delivery of the note itself to the transferee, as mentioned above. Id.

[8] Co. Litt. 152, a, 151, b. This maxim cited by the Supreme Court in Carpenter, is ancient, and arises from the principle of *accessio* in Roman Law. The principle appears in various forms throughout antiquity's legal sources. See, e.g., Dig. 34.2.19 (*accessio cedit principali*, the accessory gives way to the principal); other variations include *accessorium sequitur naturam sui principalem*; *res accessoria sequitur principalem*; *et in accessoriis, praestanda sunt quae in principali*; *sublato principali, tollitur et accessorium*.

6

holder." Id. at 275, citing Baily v. Smith et al., 14 Ohio State 396 (1863).

A chose in action, at first glance, does indeed appear similar to a mortgage, insofar as it is a "right to recover...personal property by a judicial proceeding," and insofar as it is transferable like personal property. Cal.Civ.Code § 953; see also McClain v. Buck, 73 Cal. 320 (1887) ("the right to take possession of personal property is a thing in action"); U.S. v. Stonehill, 83 F.3d 1156 (9th Cir. 1996) (chose in action is transferable personal property). The Supreme Court, however, disagreed, holding that "[t]here is no analogy between this case and one where a chose in action standing alone is sought to be enforced." Carpenter, 83 U.S. at 275. The "controlling consideration" that led the Court to this conclusion was its observation of the "dependent and incidental relation" that a mortgage has with the obligation it secures: "[w]hen the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents." Id. Consequently, a mortgage is unlike any other right to take possession of property that, like a chose in action, can stand alone, and "where no such relation of dependence exists." Id. at 276. For this reason, "an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Id. at 274. While the note is "essential," the mortgage is only "an incident" to the note. Id.

## 4. Only the Holder of the Note May Enforce the Mortgage

It follows further from this that "a mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures." Restatement (Third) of Property (Mortgages) § 5.4 (citing Carpenter v. Longan). The Restatement supports this rule by analogy to the UCC's definition of

a security interest as an "interest in personal property or fixtures which secures payment or performance of an obligation." UCC § 1-201(b)(35). As the Restatement notes, "[c]ase law construing the Code holds that a security interest is unenforceable in the absence of its underlying obligation." Id., citing Bank of Lexington v. Jack Adams Aircraft Sales, 570 F.2d 1220 (5th Cir. 1978); In re G.O. Harris Financial Corp., 51 B.R. 100 (Bankr. S.D.Fla. 1985) ("in order for a creditor to have lien rights in the property of a debtor, the creditor must hold an enforceable obligation against the debtor"); see also In re Belize Airways Ltd., 7 B.R. 604, 606 (Bankr. S.D. Fla. 1980) ("[t]o allow the assignee of a security interest [who did not also acquire the note] to enforce the security agreement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor").

## 5. Only the Holder of the Note is the "Real Party in Interest."

At the court's hearing on this motion, IndyMac argued that as the noteholder's loan servicer, it has the right to seek relief from stay under § 362(d). The court agrees that if IndyMac is duly authorized to enforce the note and mortgage as agent of the noteholder, IndyMac would have the right to enforce the mortgage on the holder's behalf. The authority to enforce the mortgage on the holder's behalf may be granted to an agent. Alternatively, if the noteholder's agent has been assigned the mortgage, the holder of the note may cause the holder of the mortgage to foreclose the mortgage, but only if the latter is an agent of the former. The authority can be express or implied, and the Restatement advises that "[c]ourts should be vigorous in seeking to find such a relationship, since the result is otherwise likely to be a

7

windfall for the mortgagor" as well as a "frustration" of the mortgagee's "expectation of security." Restatement (Third) of Property (Mortgages) § 5.4, Comment e.

The right to enforce the mortgage on behalf of the noteholder does not, however, render the noteholder's agent into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553. Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the noteholder, who is the real party in interest. Fed. R. Civ. P. 17(a)(1).

For the purpose of seeking relief from the automatic stay under § 362(d) of the Bankruptcy Code, this means that loan servicers may not seek relief from stay in their own name, if the relief sought is based on a promissory note, and if that note is held by another. Rather, only the holder of the note is the real party in interest. The loan servicer may still be a "party in interest" under § 362(d), and have suffered some injury in fact that would grant it standing to seek relief under § 362(d). There may be other parties, too - apart from the holder of the note - who suffer some injury in fact and constitute parties in interest when a homeowner defaults on a note's obligations and files for bankruptcy. Without ownership of the note, however, none of these parties possess the right to enforce either the note or the mortgage under the applicable substantive law. Only the holder the note possesses this right, and qualifies, therefore, as the real part in interest.

While some courts have held that a loan servicer is a real party in interest, none of these courts have based their holdings on an analysis of the law governing promissory notes. In some cases, the facts simply no not include a promissory note. In Greer v. O'Dell (In re O'Dell), for example, the Eleventh Circuit held that even prior to actual transfer, the purchaser of consumer credit card debt was a "real party in interest" for the purpose of filing a proof of claim pursuant to its Interim Servicing Agreement with the transferor. See O'Dell, 305 F.3d 1297, 1302-03 (11th Cir. 2002). Since the interim agreement delegated to the purchaser the responsibility for administering the accounts, the court held that the purchaser was the party entitled to enforce the right to payment, even though the purchaser did not yet possess the claim itself. Id. The credit card debt in this case, however, was not governed by the same law that governs promissory notes. It is for this reason that the court did not discuss the right to enforcement under UCC § 3-301, as would have been necessary in order to determine who the real party in interest is in a motion for relief from stay based on a promissory note. The O'Dell court's analysis, therefore, is distinguishable from the context of this case, because the substantive law that would determine the real party in interest is entirely different.

This distinction notwithstanding, the Greer court states in dicta that "other courts have held in similar contexts that mortgage servicers are real parties in interest," relying on Myers v. Citicorp Mortgage, Inc., 878 F.Supp. 1553, 1558 (M.D. Ala. 1995), aff'd 208 F.3d 1011 (11th Cir. 2000) (unpublished table decision) for this proposition. See O'Dell, 305 F.3d at 1303. But there is no basis for such a proposition in Myers. Rather, the holding in Myers is that the assignment of a mortgage, even if only for an instant, creates liability in the assignee

8

under the Truth in Lending Act, although not to the same extent as other creditors. See Myers, 878 F.Supp. at 1558. Indeed, the Myers opinion contains no discussion of the real party in interest rule whatsoever.

The one other case on which O'Dell depends for the proposition that a mortgage servicer is a real party in interest is In re Tainan, 48 B.R. 250 (Bankr. E.D. Pa. 1985). O'Dell is the only case of which this court is aware in which a court has held that a mortgage loan servicer, though not the holder of the note, is nevertheless a real party in interest to a motion for relief from the automatic stay. In re Tainan, 48 B.R. at 252. The court in Tainan correctly opens its analysis by noting that "[w]hether a plaintiff is the real party in interest is to be determined by reference to the applicable substantive state law." Id. at 252 (citing Wright & Miller ¶ 1543). The Tainan court errs, however, in its identification of the applicable substantive law by failing to consider UCC Article 3 at all. Rather, the court ignores the substantive law that applies to promissory notes, and instead makes the the court makes the somewhat redundant observation that "[u]nder Pennsylvania law, a real party in interest must be in such command of the action as to be legally entitled to give a complete acquittal or discharge to the other party upon performance." Id. Moreover, the court's only rationale for holding that the servicer is a real party in interest is the servicer's "capacity as representative for collection purposes," id. But as this court has already noted, this agency argument – the same argument advanced by Indymac at the hearing on this motion – fails as a matter of law. See Wright & Miller § 1553.[9]

---

[9] There are other cases sometimes cited for the proposition that a loan servicer is a real party in interest, but in fact, these cases do not actually go so far as to decide the issue.

## IV. CONCLUSION

Consequently, if a loan servicer wishes to seek relief from the automatic stay, either as agent or nominee of the

---

For example, in Bankers Trust (Delaware) v. 236 Beltway Inv., 865 F.Supp. 1186, 1191 (E.D. Va. 1994), the trustee of a securitized pool of mortgages brought suit on one of the pooled notes, something which a trustee – quite apart from an agent – is fully capable of doing as a real party in interest. See Wright & Miller ¶ 1548 ("The trustee of an express rtust may sue in his own name as the real party in interest..."). Having acknowledged that the trustee was a real party in interest, the court goes on to merely speculate in dicta that "the servicer, as receiver and collector of moneys due under the mortgages, may also have standing to sue for deficiencies," even though the servicer was not a party to the action. See Bankers Trust, 865 F.Supp. at 1191.

In In re Woodberry, 383 B.R. 373 (Bankr. D.S.C. 2008), the court reached the right conclusion in holding that a loan servicer who was also the holder of the note was the real party in interest to move for relief from stay, but based its holding on a flawed legal analysis. The court determined that ownership of the note could establish that the servicer was a "creditor" and therefore a "party in interest" under § 362(d), noting that "[t]he owner or holder of a note has a right to payment." In re Woodberry, 383 B.R. at 378. When considering whether the servicer was also a real party in interest, however, the court curiously ignored the substantive law that would determine this – despite having just cited it – and instead, concluded its discussion of real party in interest by conflating it with standing: "it seems the better view that a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the Bankruptcy Court." Id. at 379 (basing its holding on Tainan, Bankers Trust, and O'Dell). Regardless of its rationale, the movant in Woodberry was the actual noteholder, and therefore the real party in interest.

9

noteholder, the servicer may do so only if the noteholder either joins or ratifies the motion. Absent joinder or ratification, the noteholder must substitute into the servicer's place, and prosecute the motion on its own. Fed. R. Civ. P. 17(a)(3).[10] If the servicer has mistakenly failed to seek relief in the noteholder's name, the court must allow a reasonable time for the noteholder to join or substitute into the action. Id.

IndyMac, by its own admission, is not the holder of the note on which this motion is based, and therefore lacks the authority to enforce the note. Since it lacks the authority to enforce the note, IndyMac also has no authority whatsoever to enforce the mortgage on Kang Jin Hwang's Las Vegas residence.

As the servicer on this loan, it is true that IndyMac may have suffered some "injury in fact" which would grant it standing to seek relief from stay. It is likely, moreover, that IndyMac is a "party in interest" under § 362(d). The fact remains, however, that IndyMac does not possess the rights necessary under Article 3 of the California Commercial Code to qualify as the real party in interest under Fed. R. Civ. P. 17(a). If IndyMac wishes to prosecute this motion on behalf the note's current holder or holders, it may do so only if all real parties in interest join in this motion, or otherwise ratify it. Pursuant to Fed. R. Civ. P. 17(a)(3), the court continues this motion until August 26, 2008, to provide IndyMac a

reasonable time for the real party in interest to either ratify, join, or be substituted into this motion.

Dated: September 4, 2008

Hon. Samuel L. Bufford
United States Bankruptcy Judge

---

[10] Rule 17(a)(3) provides:
> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

10

**PROOF OF SERVICE**

I certify that a true copy of this **OPINION DENYING LIFT STAY FOR FAILURE
TO JOIN REAL PARTY IN INTEREST** was served on SEP 1 0 2008 08.

Kang Jin Hwang
1635 4th Street
Los Angeles, California 90019

Robert K. Lee, Esq.
3435 Wilshire Boulevard
Suite 2741
Los Angeles, California 90010

William G. Malcolm, Esq.
Malcolm Cisneros, A Law Corporation
2112 Business Center Drive
2nd Floor
Irvine, California 92612

Sam S. Leslie, Trustee
6310 San Vicente Boulevard
Suite 320
Los Angeles, California 90048

U.S. Trustee
Department of Justice
725 South Figueroa Street
26h Floor
Los Angeles, California 90017

Dated:

SEP 1 0 2008

_____
DEPUTY CLERK

11

**14**

WILLIAM G. MALCOLM, #129271
DON ROBINSON, #123411
KEVIN HAHN, #231579
MALCOLM ♦ CISNEROS
2112 Business Center Drive
2nd Floor
Irvine, California 92612
Telephone:     (949) 252-9400
Telecopier:    (949) 252-1032

 Attorneys for Movant

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>KANG JIN HWANG,<br>          Debtor. | Case No. 2:08-bk-15337 SB<br><br>[Chapter 7] |
| FDIC as Conservator for<br>INDYMAC FEDERAL BANK, FSB,<br><br>          Movant,<br><br>          vs.<br><br>KANG JIN HWANG, Debtor, and<br>SAM S. LESLIE,<br>          Respondents. | **SECOND SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDYMAC FEDERAL BANK'S MOTION FOR RELIEF FROM STAY**<br><br>**DATE:** September 23, 2008<br>**TIME:** 9:30 a.m.<br>**CTRM:** 1575<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

        INDYMAC FEDERAL BANK ("IndyMac Federal") respectfully
submits the following Memorandum of Points and Authorities
designed to address the points raised in the Court's Opinion
Denying Lift Stay for Failure to Join Real Party In Interest
("Opinion").

///

///

///

SUPPLEMENTAL BRIEF                    1
EFP/IMB/18081

### I. INTRODUCTION

IndyMac is the holder of the note and, as such, has the authority to enforce the obligations secured by the deed of trust. Moreover, as the loan servicer for Freddie Mac and agent for collection, IndyMac is a real party in interest entitled to bring suit in its own name even if it lacks a beneficial interest in the loan.

The requirements of Rule 17(a) of the Federal Rules of Civil Procedure are for the benefit of defendants and an objection on real party in interest grounds is waived if not raised in a timely fashion. In the present case, the Debtor has scheduled IndyMac as a creditor with an undisputed claim, admitted that he lacks equity in the property that is the subject of the relief from stay motion, and signaled his intent to surrender the property to IndyMac. The Debtor and the Trustee do not oppose relief from stay. Neither the Debtor nor the Trustee has objected to the motion for relief from stay on the ground that IndyMac is not the real party in interest. As such, IndyMac objects to the Bankruptcy Court raising the real party in interest issue of Rule 17(a) *sua sponte*.

### II. FACTS

On January 25, 2007, Kang Jin Hwang ("Debtor") executed an Adjustable Rate Note ("Note") payable to Mortgageit, Inc. ("Mortgageit") for $376,000.00. Real Property Declaration of Erica A. Johnson-Seck ("Real Property Declaration")(attached to the Notice of Motion and Motion for Relief from the Automatic Stay), Exh. 2. Mortgageit indorsed the Note to IndyMac Bank, F.S.B. by affixing a stamp that provided: "Pay to the order of:

SUPPLEMENTAL BRIEF                2
EFP/IMB/18081

1  IndyMac Bank, F.S.B., Without Recourse, Mortgageit, Inc." The
2  indorsement was signed by Stacy Asher, Mortgageit's Assistant
3  Secretary. *Id.*, Exh. 2, p. 4.

4       The Note was secured by a Deed of Trust that
5  identified Debtor as the borrower, Mortgageit as the lender, and
6  Mortgage Electronic Registration Systems, Inc. ("MERS") as the
7  beneficiary. Real Property Declaration, Exh. 1. The Deed of
8  Trust encumbered the real property located at 501 Delamere Way,
9  Las Vegas, Nevada 89123 ("Property"). On January 28, 2008, MERS
10 assigned the Deed of Trust "*TOGETHER with the note or notes*
11 *therein described* and secured thereby" to IndyMac Bank, FSB.
12 *Id.*, Exh. 3 (emphasis added). The assignment was recorded with
13 the Office of the Clark county Recorder on May 6, 2008. *Id.*

14      On April 22, 2008, the Debtor filed the above-
15 captioned Chapter 7 bankruptcy case. The Debtor listed IndyMac
16 Bank, F.S.B. as a secured creditor holding a first mortgage on
17 the Property securing a claim that the Debtor estimated at
18 $375,762.00.[1] Real Property Declaration, Exh. 4. The Debtor did
19 not check the box that would have indicated that the claim was
20 disputed. *Id.*

21      The Debtor's schedules show that as of the filing date
22 the Property was worth $358,000.00 and encumbered by liens
23 totaling $477,921.00. Real Property Declaration, Exh. 4. The
24 Debtor filed a Chapter 7 Individual Debtor's Statement of
25 Intention indicating that he intended to surrender the Property
26 to IndyMac Bank, F.S.B. Motion for Relief from the Automatic

27
---
[1] IndyMac's records show that the Debtor actually owed IndyMac
28 $404,155.90 after prepetition interest, late charges, costs and advance
were added. Real Property Declaration, p. 2.
SUPPLEMENTAL BRIEF           3
EFP/IMB/18081

1    Stay, p. 2, § 3(a)(4); Chapter 7 Individual's Debtor's Statement
2    of Intention.

3         On May 23, 2008, IndyMac Bank, F.S.B. filed the
4    present motion for relief from stay. Neither the Debtor nor the
5    Chapter 7 Trustee opposed the motion or disputed IndyMac's
6    claim. Nevertheless, the court issued an order requiring
7    IndyMac to bring to court each declarant for whom a declaration
8    had been submitted in support of its motion pursuant to Local
9    rule 9013-1(a)(13)(A). According to the Court, "[a] similar
10   order has been issued by the court in other motions for relief
11   from the automatic stay since the beginning of the year because
12   this court has taken notice of recent cases and academic studies
13   that reveal the inaccuracy of payment records in the mortgage
14   industry."[2] Opinion, p. 2.

15        In addition, the Court required IndyMac Bank, F.S.B.
16   to bring the original promissory note to court for inspection.
17   As the Court noted, it imposed this requirement in January of
18   this year on all moving parties seeking relief from stay based
19   upon promissory notes because "developments in the secondary
20   market for mortgages (and other security interests) have caused
21   the court to lack confidence that presenting a copy of a
22   promissory note is sufficient to show that a movant has the
23   right to enforce the note, or that it otherwise qualifies as a
24   real party in interest (as required by Rules 7017 and 9014."
25   Opinion, p. 2.

26   ///

27
     _____
28   [2] The Court cited no cases and only one such academic study. The Court
     did not single out Movant as a party which, in the Court's experience,
     had a history of keeping inaccurate payment records.
     SUPPLEMENTAL BRIEF                    4
     EFP/IMB/18081

1          The Office of Thrift Supervision closed IndyMac Bank,
2     F.S.B. on July 11, 2008 and appointed the Federal Deposit
3     Insurance Corporation ("FDIC") as receiver for the bank.
4     Supplemental Declaration of Erica Johnson-Seck In Support of
5     IndyMac Federal Bank's Motion for Relief from Stay (Johnson-Seck
6     Supplemental Declaration"), p. 2.   On the same date, a new
7     institution, IndyMac Federal Bank, F.S.B. ("IndyMac Federal")
8     was chartered and all the insured deposits and substantially all
9     of the assets of the receiver were transferred to IndyMac
10    Federal.   *Id.*   IndyMac Federal was then placed into
11    conservatorship and the FDIC was appointed as conservator.  *Id.*

12         The Court held a hearing on the relief from stay
13    motion on July 15, 2008.   Neither the Debtor nor the Chapter 7
14    Trustee appeared to oppose the motion.   Erica Johnson-Seck, Vice
15    President of the bankruptcy and foreclosure departments of
16    IndyMac Federal (who served in the same capacity at IndyMac
17    Bank, F.S.B.), testified as to the accuracy of the bank's
18    payment records and presented the original promissory note to
19    the Court for inspection.

20         The Court raised the issue of IndyMac's standing
21    because of the FDIC's appointment as receiver.   After Johnson-
22    Seck testified that IndyMac Bank's assets, including the loan,
23    had been transferred to IndyMac Federal, which is still
24    servicing the loan, the Court allowed the hearing to proceed.

25         The Court was "satisfied with the declarant's
26    testimony on the accuracy of the payments records," but asked
27    whether there was an investor for the loan.   Opinion, p. 3.
28    Johnson-Seck testified that IndyMac was the holder of the note

SUPPLEMENTAL BRIEF                5
EFP/IMB/18081

1!

B18 (Official Form 18)
(12/07)

# United States Bankruptcy Court
## Central District Of California

255 East Temple Street, Los Angeles, CA 90012

## DISCHARGE OF DEBTOR

**DEBTOR(S) INFORMATION\*:**
Kang Jin Hwang

**BANKRUPTCY NO.**
2:08-bk-15337-SB

**Last four digits of Social–Security or
Individual Taxpayer–Identification (ITIN)
No(s)., (if any):** xxx-xx-8001

**CHAPTER** 7

**Employer Tax–Identification (EIN)
No(s).(if any):** N/A

**Address:**
1635 4th Street
Los Angeles, CA 90019

It appearing that the debtor is entitled to a discharge, IT IS ORDERED: The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

FOR THE COURT,

Dated: September 24, 2008

**Jon D. Ceretto**
Clerk of the Court

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION

*\* Set forth all names, including trade names, used by the debtor(s) within the last 8 years. For joint debtors, set forth the last four digits of both social–security numbers or individual taxpayer–identification numbers.*

(Form rev. 12/07) VAN–30

27/ LS2

B18 (Official Form 18) Cont.
(12/07)

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged.

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift savings Plan for federal employees for certain types of loads form these plans.

This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.

**16**

ENTERED

OCT 10 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk



FILED

OCT 10 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:                                )   Case No.: LA08-15337SB
                                      )
**KANG JIN HWANG,**                   )   Chapter 7
                                      )
                          Debtor.     )
                                      )   **ORDER TO INDYMAC FEDERAL BANK**
                                      )   **PURSUANT TO RULE 19**
                                      )
                                      )   Date:   September 23, 2008
                                      )   Time:   9:30 a.m.
                                      )   Ctrm:   1575
                                      )
──────────────────────────────────   )

Pursuant to Rule 9014(c), the Court hereby directs that Rule 7019 (incorporating my reference Rule 19 of Federal Rules of Civil Procedure) applies to this Motion for Relief from Automatic Stay brought by IndyMac Federal Bank ("Movant").

The Court hereby finds that the owner of the note here at issue is a party whose joinder is required pursuant to Rule 19, on the grounds that the note owner claims an interest relating to the subject of the action and is so situated that disposing of the action in the owner's absence may leave the debtor subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations under the note. Thus, pursuant to Rule 19(a)(2), the Court orders that the undisclosed owner of the note here at issue be joined as a party to this Motion.

1

1      The Court finds that 10 days is a reasonable time for effecting such joinder.  Therefore,

2 the Court orders that such joinder be completed by October 20, 2008.

3      Movant is further ordered to comply with Rule 19(c) and to state the name of the owner

4 of the note and the reasons for not previously joining that person.

5      If the owner of the note cannot be joined pursuant to this Order, Movant is ordered to

6 file a brief, no later than October 20, 2008, addressing the issue of whether, pursuant to Rule

7 19(b), the matter should be proceed among the existing parties or should be dismissed.

8

9 Dated:  October 10, 2008

10

11

12

13                         Hon. Samuel L. Bufford
                        United States Bankruptcy Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PROOF OF SERVICE**

I certify that a true copy of this **ORDER TO INDYMAC FEDERAL BANK PURSUANT TO RULE 19** was served on October 10, 2008.

Kang Jin Hwang
1635 4th Street
Los Angeles, California 90019

Robert K. Lee, Esq.
3435 Wilshire Boulevard
Suite 2741
Los Angeles, California 90010

William G. Malcolm, Esq.
Malcolm Cisneros, A Law Corporation
2112 Business Center Drive
2nd Floor
Irvine, California 92612

Sam S. Leslie, Trustee
6310 San Vicente Boulevard
Suite 320
Los Angeles, California 90048

U.S. Trustee
Department of Justice
725 South Figueroa Street
26h Floor
Los Angeles, California 90017

Dated:     **OCT 1 0 2008**

_____
DEPUTY CLERK

3

17

1   WILLIAM G. MALCOLM, #129271
    DON ROBINSON, #123411
2   KEVIN HAHN, #231579
    MALCOLM ♦ CISNEROS, A Law Corporation
3   2112 Business Center Drive, Second Floor
    Irvine, California 92612
4   Phone: (949) 252-9400
    Facsimile: (949) 252-1032
5
    Attorneys for Movant
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                       LOS ANGELES DIVISION

11
    In re:                                    Case No. 2:08-bk-15337-SB
12
    KANG JIN HWANG,                           [Chapter 7]
13
              Debtor.
14
    FDIC as Conservator for INDYMAC
15  FEDERAL BANK, FSB,
                                              RESPONSE TO ORDER TO INDYMAC
16            Movant,                         FEDERAL BANK PURSUANT TO RULE 19

17            vs.                             DATE: September 23, 2008
                                              TIME: 9:30 a.m.
18  KANG JIN HWANG, Debtor, and SAM S.        CTRM: 1575
    LESLIE,
19
              Respondents.
20

21          FDIC as Conservator for INDYMAC FEDERAL BANK ("Movant") respectfully

22  submits the following response to the Court's Order to IndyMac Federal Bank Pursuant to Rule

23  19.

24          As Movant noted in the Supplemental Memorandum of Points and Authorities

25  filed on August 22, 2008, IndyMac is the holder of the note and, as such, has the authority to

26  enforce the obligations secured by the deed of trust. Moreover, as the loan servicer for Freddie

27  Mac, IndyMac is a real party in interest entitled to bring suit in its own name even if it lacks a

28  beneficial interest in the loan.

                                          1

1    The Court obviously disagreed and entered a Judicial Opinion Denying Lift Stay

2  for Failure to Join Real Party in Interest on September 10, 2008. Rather than entering an order

3  denying the motion for relief from stay in a separate document pursuant to Bankruptcy Rule

4  9021, however, the Court provided Movant with an opportunity to join the note owner(s) as a

5  party.

6    Movant believes the issue of the capacity of a note holder and loan servicer to

7  seek relief from stay without joining the beneficial owner(s) of the note is of such paramount

8  importance that it respectfully requests the Court to enter a final order on the motion for relief

9  from stay without further delay in order to allow Movant to appeal, if necessary.

10  DATED: October 20, 2008                    Respectfully Submitted,
                                              MALCOLM ♦ CISNEROS, A Law Corporation

11

12

13                                            By: /s/ William G. Malcolm
                                                  WILLIAM G. MALCOLM
14                                                Attorneys for Movant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

WILLIAM G. MALCOLM, #129271
DON ROBINSON, #123411
KEVIN HAHN, #231579
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive, Second Floor
Irvine, California 92612
Phone: (949) 252-9400
Facsimile: (949) 252-1032

Attorneys for Movant

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>KANG JIN HWANG,<br>        Debtor. | Case No. 2:08-bk-15337-SB<br><br>[Chapter 7] |
| FDIC as Conservator for INDYMAC<br>FEDERAL BANK, FSB,<br><br>        Movant,<br><br>vs.<br><br>KANG JIN HWANG, Debtor, and SAM S.<br>LESLIE,<br><br>        Respondents. | **RESPONSE TO ORDER TO INDYMAC<br>FEDERAL BANK PURSUANT TO RULE 19**<br><br>**DATE:** September 23, 2008<br>**TIME:** 9:30 a.m.<br>**CTRM:** 1575 |

FDIC as Conservator for INDYMAC FEDERAL BANK ("Movant") respectfully submits the following response to the Court's Order to IndyMac Federal Bank Pursuant to Rule 19.

As Movant noted in the Supplemental Memorandum of Points and Authorities filed on August 22, 2008, IndyMac is the holder of the note and, as such, has the authority to enforce the obligations secured by the deed of trust. Moreover, as the loan servicer for Freddie Mac, IndyMac is a real party in interest entitled to bring suit in its own name even if it lacks a beneficial interest in the loan.

1

1    The Court obviously disagreed and entered a Judicial Opinion Denying Lift Stay

2   for Failure to Join Real Party in Interest on September 10, 2008. Rather than entering an order

3   denying the motion for relief from stay in a separate document pursuant to Bankruptcy Rule

4   9021, however, the Court provided Movant with an opportunity to join the note owner(s) as a

5   party.

6    Movant believes the issue of the capacity of a note holder and loan servicer to

7   seek relief from stay without joining the beneficial owner(s) of the note is of such paramount

8   importance that it respectfully requests the Court to enter a final order on the motion for relief

9   from stay without further delay in order to allow Movant to appeal, if necessary.

10   DATED: October 20, 2008              Respectfully Submitted,
                                          MALCOLM ♦ CISNEROS, A Law Corporation

13                                        By: /s/ William G. Malcolm
14                                            WILLIAM G. MALCOLM
                                              Attorneys for Movant

2

**18**



ENTERED

OCT 2 9 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

FILED

OCT 2 9 2008

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:                                          ) Case No.: LA08-15337SB
                                                )
KANG JIN HWANG,                                 ) Chapter 7
                                                )
                        Debtor.                 )
                                                ) **AMENDED OPINION DENYING RELIEF
                                                ) FROM AUTOMATIC STAY**
                                                )
                                                )
                                                ) Date:  September 24, 2008
                                                ) Time:  9:30 a.m.
                                                ) Ctrm:  1575

### I. Introduction

IndyMac Federal Bank ("IndyMac Federal") brings this motion, which the court grants, to reconsider its denial of relief from the § 362[1] automatic stay to foreclose on real property belonging to debtor Kang Jin Hwang in Las Vegas. The property is security for a promissory note that was sold to the Federal Home Loan Mortgage Corp. ("Freddie Mac"), which has not joined and is not a party to this motion. Freddie Mac, in

turn, has most likely sold the note to unknown third parties for securitization.

After trial on the motion for relief from stay, and several rounds of briefing, the question remains: to whom is the debt owed (i.e., who owns the promissory note)? *See In re Gavin,* 319 B.R. 27, 31 (B.A.P. 1st Cir. 2004) (same). The court denies the motion on two procedural grounds: IndyMac Federal is not the real party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure, and the joinder of the owner of the note is required by Rule 19.

Subject to these procedural infirmities, the court finds that IndyMac Federal is entitled to enforce the note under California law (and the Uniform Commercial Code ("UCC")): IndyMac Federal remains the holder of the note, notwithstanding the sale, because it has

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101-1532 (West 2008) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

1

possession of the note and the note is payable to its predecessor IndyMac Bank, F.S.E. ("IndyMac Bank").

## II. RELEVANT FACTS

Kang Jin Hwang filed this chapter 7 case on April 22, 2008. Hwang's residence in Las Vegas, Nevada is encumbered by a first deed of trust recorded on February 1, 2007, supporting a promissory note in the amount of $376,000. The original payee on the promissory note, as well as the beneficiary of the deed of trust, is Mortgageit, Inc. ("Mortgageit"). Apparently, at some time before this case was filed, Mortgageit transferred the note to IndyMac Bank. After this motion was filed, IndyMac Bank was taken over by the Federal Deposit Insurance Corporation ("FDIC") and put into a conservatorship that now operates under the name IndyMac Federal, which has substituted into this motion. (Because IndyMac Bank, IndyMac Federal and the conservatorship have an identity of interests, they are referred to collectively here as "IndyMac.")

The deed of trust names MERS as "the beneficiary under the Security Instrument as a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."[2] By Assignment of Deed of Trust dated January 29, 2008, which is attached to the motion, MERS transferred the deed of trust to IndyMac. Thus, MERS is no longer a party in interest as to this loan.

IndyMac sold the note to unidentified "investors" through Freddie Mac, apparently at some time prior to the filing of this bankruptcy case. Most likely, Freddie Mac sold the note into a securitization trust.[3] IndyMac does not know who owns the note today, although it still has possession of the note and there is nothing on the note to indicate that it has been transferred. Neither Freddie Mac nor any of the investors has joined in this motion. In addition, IndyMac has failed to provide any documents showing its sale of the note or its status as a servicing agent for the note's new owner.

IndyMac filed this motion for relief from the automatic stay on May 23, 2008, and set it for hearing on June 24. The motion included a declaration by Erica A. Johnson-Sect, an IndyMac vice president, providing the factual grounds for the motion. Copies of the promissory note and the deed of trust are attached to her declaration. Pursuant to Local Rule 9013-1(a)(13)(A), the court issued an order on June 10 requiring that IndyMac bring to court each declarant for whom a declaration had been submitted in support of its motion, for the purpose of presenting testimony to support the declaration.[4]

Erica A. Johnson-Sect, a Vice President of IndyMac, testified at the trial on this motion on July 15, 2008,[5] and brought the original note to court. While the court was satisfied with the declarant's testimony on the accuracy of the payment records, she testified that IndyMac no longer owned the note, but had sold it to investors through Freddie Mac. The court finds her testimony credible on this point.

---

[2] MERS, Inc. is an entity whose sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS System. This system is a national electronic registry of mortgage loans, itself owned and operated by MERS, Inc.'s parent company, MERSCORP, Inc.

[3] See, e.g., James R. Barth et al., A Short History of the Subprime Mortgage Market Meltdown 5 fig.2 (Milken Institute 2008), available at http://www.milkeninstitute.org/

publications/publications.taf?function=detail&I D=38801038&cat=Papers (showing that approximately 85% of all home mortgages originated in 2006 and 2007 were securitized).

[4] The court requires such testimony because it has found that numerous declarants in relief from stay motions are not competent to testify as to the information included in their declarations. See, e.g., In re Vargas, __ B.R. __ (Bankr. C.D. Cal. 2008) (finding that the declarant was a low level clerk who was not competent to provide any relevant testimony contained in his declaration).

[5] The hearing was continued from June 28 to July 15 at movant's request, because Ms. Johnson-Sect was not available to testify on June 28.

2

1    Ms. Johnson-Sect also testified that
IndyMac has brought this motion as the duly
2    authorized servicing agent for the new owner
of the note.  The court disbelieves this
3    testimony, particularly in view of (a) her
testimony that she does not know who owns
4    the note at the present time, and (b) the failure
to offer in evidence any servicing agreement
5    with the new owner.

6                    III. DISCUSSION

7            IndyMac argues that it is entitled to
enforce the note because it possesses the
8    note and the note shows it as transferee and
no indorsement transferring it to any other
9    party. IndyMac also argues that the court may
not raise sua sponte any deficiencies in the
10   evidence it has presented to the court.

        A motion for relief from the automatic
11   stay must satisfy both substantive and
procedural requirements.    The substantive
12   requirements are provided by § 362(d).  The
procedural requirements are imposed by the
13   United States Constitution (due process) and
the Federal Rules of Bankruptcy Procedure
14   (which mostly incorporate the Federal Rules of
Civil Procedure).  The applicable rules here
15   are the "real party in interest" rule and the
"required joinder" rule.
16       The court finds that IndyMac is
entitled to enforce the note, notwithstanding
17   the sale to Freddie Mac.  However, in coming
to federal court, IndyMac must comply with the
18   applicable procedures in this court.  Two of
these rules, the real party in interest rule and
19   the required joinder rule, each requires
IndyMac to join the present owner of the note
20   in this motion for relief from stay, which it has
refused to do.
21

22           A.  Right to Enforce the Note

23       Since a party (such as IndyMac in this
case) that seeks relief under § 362(d) does so
24   in order to enforce rights that have been
stayed by § 362(a), it is necessary to consider
25   who is entitled to enforce the note under the
substantive law that governs those rights.
26   Thus, for a relief from stay motion based on a
promissory note, the court must look to the
27   substantive law that governs promissory
notes.

28

        Bankruptcy law does not provide for
the enforcement of promissory notes
generally.  In the absence of bankruptcy law,
the legal obligations of the parties are
determined by the applicable non-bankruptcy
law, which is usually state law.  See, e.g.,
United States v. Butner, 440 U.S. 48, 54-55
(1979).

        In the United States, the law of
promissory notes is not unified at the federal
level.  Instead, each state has its own law on
promissory notes.  However, every state has
adopted a version of the UCC to govern
negotiable promissory notes.  Thus, we turn to
the California Commercial Code ("CComC"),
the California version of the UCC.

1. Relevant Law of Negotiable Instruments

        The substantive California law that
governs negotiable instruments is CComC
Division 3 (the California version of UCC
Article 3).   See CComC § 3102(a).   A
negotiable instrument[8] (or more briefly, for

---

[8]  "Negotiable instrument" is defined in §
3104(a) (UCC § 3-104) as follows (with certain
exceptions not relevant in this case):

        (a)   "[N]egotiable   instrument"
        means an unconditional promise
        or order to pay a fixed amount of
        money, with or without interest or
        other charges described in the
        promise or order, if it is all of the
        following:

        (1) Is payable to bearer or to
        order at the time it is issued or
        first comes into possession of a
        holder.

        (2) Is payable on demand or at a
        definite time.

        (3) Does not state any other
        undertaking or instruction by the
        person promising or ordering
        payment to do any act in addition
        to the payment of money, but the
        promise or order may contain (i)
        an undertaking or power to give,
        maintain, or protect (collateral to

3

Division 3 purposes, an "instrument")[7] typically takes one of two forms: a promissory note (designated as a "note"), or a draft (such as a check).[8] This case involves a note secured by a deed of trust.

An instrument (including a secured note) may only be enforced by the "holder" of the note (with minor exceptions not relevant to this case). *See* CComC § 3301(a); UCC § 3-301(a). For an instrument payable to an identified person (such as the note in this case), there are two requirements for a person to qualify as a holder: (a) the person must be in possession of the instrument, and (b) the instrument must be payable to that person. *See* CComC § 1201(20); UCC § 1-201(20).

The payee of an instrument may negotiate it by indorsing it and delivering it to another person, who then becomes its holder[9] (and entitled to enforce it). Commercial Code § 3201 (UCC § 3-201) defines "negotiation" as follows:

> (a) "Negotiation" means a transfer of possession ... of an instrument by a person other than the issuer to a person who thereby becomes its holder.

---

> secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

[7] For the purposes of Division 3, "[i]nstrument means a negotiable instrument." *Id.* § 3104(b) (internal quotations omitted).

[8] *See id.* § 3104(e); *see also* cmt. 4: "Instruments are divided into two general categories: drafts and notes." Negotiable instruments also include cashiers checks, teller's checks, money orders, travelers checks and certificates of deposit.

[9] In some circumstances, the transferee may obtain better rights than the transferor, by virtue of being a holder in due course. *See* CComC § 3305(b); UCC § 3-305(b). No such issue arises in this case.

(b) . . . [I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

A fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, not by contract or assignment. The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument . . . ." CComC § 3203(b); UCC § 3-203(b). Thus, the right to enforce a negotiable instrument is only transferable by delivery of the instrument itself. CComC § 3203; UCC § 3-203.

The transfer of a negotiable instrument has an additional requirement: the transferor must indorse the instrument to make it payable to the transferee. *See* CComC § 3205(a); UCC § 3-205(a). Alternatively, the transferor may indorse the instrument in blank, and thereby make it enforceable by anyone in its possession (much like paper currency). *See* CComC § 3205(b); UCC § 3-205(b). If the transferor makes a transfer without indorsing the instrument, the transferee has a right to demand indorsement by the transferor. *See* CComC § 3203(c); UCC § 3-203(c).

### 2. Who May Enforce the Note In this Case

IndyMac contends, and the court assumes without deciding, that the note here at issue is a negotiable instrument, as defined in the CComC § 3104(a), (b) and (e). The note is on a standard printed form that is used in the finance industry for notes that are freely bought and sold in a manner inconsistent with treating it as a non-negotiable note. Thus IndyMac must be the holder of the note to entitle it to enforce the note (including bringing this relief from stay motion). *Accord, In re Foreclosure Cases,* 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) ("To show standing . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed.").

4

In this case, the note is payable to IndyMac (pursuant to its negotiation from Mortgageit to IndyMac), and IndyMac had possession of the note at the time that the motion was filed. Under these facts, IndyMac qualifies as the holder of the note.

There is a second scenario, not supported by the evidence in this case, in which IndyMac would have a right to enforce the note. If IndyMac held the note on behalf of the new owner (Freddie Mac or its subsequent transferee), this would constitute possession by the new owner, and IndyMac would be entitled to seek relief from stay on the new owner's behalf (provided that it joined the new owner in the motion).[10]

Notably, however, IndyMac does not contend that it holds the note as an agent on behalf of Freddie Mac or its transferee. Indeed, it is doubtful that IndyMac could make such a claim, because IndyMac does not know who owns the note. Thus, this argument is not available.

### 3. Sale of the Note to Freddie Mac

In this case IndyMac sold the note to Freddie Mac, which in turn most likely sold it again as part of a securitization transaction. Insofar as the record before the court discloses, the owner of the note today is unknown.

In this case, IndyMac has not delivered the note to Freddie Mac (or its successor): IndyMac still possesses the note. In addition, the note bears no indication of a transfer: it still shows IndyMac as the payee (pursuant to the indorsement from Mortgageit). In consequence, IndyMac remains the holder of the note and is entitled to enforce it under CComC § 3301(a) (UCC § 3-301(a)): the right to enforce the note has not yet passed to Freddie Mac or its successor owner of the note. This interpretation of § 3203 is supported by Note 1, which states in relevant part:

> [A] person who has an ownership right in an instrument might not

be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3203(a) until it is delivered to Y.

> An instrument is a reified right to payment. The right is represented by the instrument itself. The right to payment is transferred by delivery of possession of the instrument "by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."

The foregoing makes it clear that no successor to IndyMac presently has a right to enforce the note, because IndyMac still has possession of the note.

This raises the question of who, if anybody, is presently entitled to enforce the note in these circumstances. Two alternatives are available. First, there may be no entity that is entitled to enforce the note until its delivery to its new rightful owner is accomplished. Second, because IndyMac continues to possess the note, it may be entitled to enforce the note, even though the note is owned by another entity.

There are good policy reasons for adopting the first alternative. Disabling the transferor from enforcing the note upon its sale to a new owner encourages the parties to complete the transaction by delivery of the instrument to the new owner. In the present configuration of the home mortgage industry, this policy can be important: it would discourage an apparently common practice in the secondary mortgage market of failure to deliver notes when they are sold, often

---

[10] In this scenario, Freddie Mac (or the note's true owner) would have to join as a moving party. *See infra.*

5

numerous times, so that the possessor of the note may be far removed from the real owner of the note.

The second alternative also has substantial policy support. A note supporting a home mortgage ought to be enforceable, and the homeowner should be required to make the payments owing. If the owner fails to pay, the markets rely on the ability of the noteholder to bring foreclosure proceedings to realize the value of the note. As the court in *In re Foreclosure Cases* stated: "This Court is well aware that entities who hold valid notes are entitled to receive timely payments in accordance with the notes. And, if they do not receive timely payments, the entities have the right to seek foreclosure on the accompanying mortgages." 521 F. Supp. 2d at 654.

Interposing a hiatus on the right to foreclose (apart from the automatic stay resulting from the filing of a bankruptcy case) interferes with the security of lenders in the home mortgage market. In addition, the noteholder is in position to cancel the note upon payment and to deliver the canceled note to the obligor.

IndyMac cites no case holding that, after selling (but not delivering) a secured note to an unrelated third party, the seller is entitled to enforce the note for its own account. The court's independent research has discovered two such cases, both involving transfers to corporations wholly owned by the sellers: *Edwards v. Mesch*, 763 P.2d 1169 (N.M. 1988); *Spears v. Southerland*, 23 P.2d 622 (N.M. 1933).[11] Both cases involved transfers to corporations owned by the sellers (100% in the *Edwards* case; 95% in the *Spears* case). The sale of a note to an unrelated third party, as in this case, is a very different situation.

In the court's view, the second alternative is the better view: the holder of a note is entitled to enforce it, notwithstanding sale of the note to another party, until the note is delivered to the purchaser (after indorsement, if appropriate). This assures that, notwithstanding the sale of the note and the failure to deliver the note pursuant to the sale, a holder exists that may enforce the note

against the obligor. Thus, the court holds that, notwithstanding the sale of the note, IndyMac remains the holder of the note and is entitled to enforce it.

The debtor is not at risk in making payments on the note to IndyMac instead of the owner of the note. CComC § 3602 (UCC § 3-602) provides that any payment to a "person entitled to enforce the instrument" must be credited against the note, even if the debtor knows that a different party is claiming ownership of or an interest in the note.[12]

## B. Real Party in Interest

IndyMac's substantive right to enforce the note, as the holder, does not dispose of the motion before the court. In coming to federal court to enforce this right, IndyMac must comply with the applicable procedures of federal court. Two such procedures stand in the way of granting the motion for relief from stay in this case. The first procedural problem arises from the real party in interest rule.

Rule 17 of the Federal Rules of Civil Procedure provides: "An action must be prosecuted in the name of the real party in interest."[13] The purpose of this rule is to

---

[11] *Spears* was decided in 1933, long before the drafting of the UCC that governs this case.

[12] CComC § 3602(a) provides in relevant part:

> [A]n instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3-306 by another person.

[13] Rule 17 provides in relevant part:

> (a) Real Party in Interest.
>
> (1) Designation in General.

6

require that an action be brought "in the name of the party who possesses the substantive right being asserted under the applicable law . . . ." 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1541 (1990) ("WRIGHT").

The analysis making the real party in interest rule applicable to relief from stay motions is complex. Rule 4001 provides: "A motion for relief from an automatic stay . . . shall be made in accordance with Rule 9014," which provides procedural rules for contested matters. Rule 9014 provides, in turn, that many of the rules for adversary proceedings apply (with exceptions not relevant here) to contested matters. Among the adversary proceedings rules incorporated by reference in Rule 9014 is Rule 7017, which provides: "Rule 17 F.R.Civ.P. applies in adversary proceedings . . . ." We thereby arrive at IndyMac's obligation to comply with Rule 17. Thus, a party that seeks relief from stay must be a "real party in interest."

### 1. Real Party in Interest After Securitization

If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See LaSalle Bank N.A. v. Nomura Asset

> An action must be prosecuted in the name of the real party in interest. . . .
>
> (3) Joinder of the Real Party in Interest.
>
> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Capital Corp., 180 F. Supp. 2d 465, 469-71 (S.D.N.Y 2001) ("LaSalle-Nomura"); accord, LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc., 237 F. Supp. 2d 618, 631-34 (D. Md. 2002) ("LaSalle-Lehman"). This rule does not turn on who is in possession of the note.

In the LaSalle-Nomura case, the bank brought an action against Nomura Asset Capital Corp., the asset securitization trustee, "as Trustee for Certificate Holders of Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates, Series 1997- D5." Defendants moved to dismiss, in part on the grounds that the real party in interest, pursuant to Rule 17, was the mortgage servicer. In denying the motion, the court found that the real party in interest was the trustee of the trust (the plaintiff in the case), and not its loan servicer (which had not been joined in the litigation). LaSalle-Nomura, 180 F. Supp. 2d at 469-71.

The only reported opinion discovered that disagrees with this conclusion is In re Tainan, 48 B.R. 250 (E.D. Pa. 1985), an early case that gives no analysis for its conclusion that a servicing agent is a real party in interest in seeking relief from the automatic stay. See id. at 252. The court finds the Tainan case unpersuasive.

In this case, although it is most likely that the note here at issue has been included in a securitization, IndyMac has refused to provide any information about the present owner of the note, to join the owner as a moving party, or to provide copies of any of the relevant contracts. Because IndyMac has not provided the relevant documents, the court cannot determine the identity of the real party in interest.[14]

If the note is part of a securitization, the burden of joining the owner of the note is not substantial. A securitization typically involves the creation of a trust, the appointment of a trustee, a transfer to the trust of some ten thousand secured real estate notes (such as the one involved in this case) and the sale of interests in the trust to a substantial number of investors. See

---

[14] Cf. In re Viencek, 273 B.R. 354, 357-59 (Bankr. N.D.N.Y. 2002) (requiring that servicing agent amend a proof of claim to identify the owner of the claim).

7

generally, Katherine Porter, *Mistake and Misbehavior in Bankruptcy Mortgage Claims*, 87 TEX. L. REV. __, __ (2008). The trustee of the trust is authorized, pursuant to trust law, to act on behalf of the trust. Thus only the trustee, and not the investors, should be joined as the owner of the note at issue. Indeed, this is exactly what happened in both *LaSalle-Nomura* and *LaSalle-Lehman*.

The right to enforce a note on behalf of a noteholder does not convert the noteholder's agent into a real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A WRIGHT § 1553. Consequently, even if the court had found that a proper agency relationship exists between the holder of the note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the noteholder, who is the real party in interest. FED. R. CIV. P. 17(a)(1). Thus, even if IndyMac is the loan servicer for the unidentified owner of the note here at issue (a fact that IndyMac has failed to prove), it is not the real party in interest that is required to bring the motion before the court.[15]

The court concludes that the real party in interest has not joined in the motion before the court. Indeed, neither the court nor IndyMac even knows who the real party in interest is. Pursuant to Rule 17(a)(3), the court must give IndyMac a reasonable amount of time to accomplish this joinder. Despite two continuances (totaling more than two months) to accomplish this joinder, IndyMac has refused to join the owner of the note in this motion. Thus, the motion must be denied on these grounds.

---

[15] Counsel for IndyMac has failed even to mention either *LaSalle* case in any of the three briefs that it has filed in this matter, and has thus forfeited the right to attempt to distinguish them.

## 2. Contrast of "Real Party in Interest" with "Party in Interest" and Standing

The concepts of "party in interest" and "standing" are frequently confused with the concept of "real party in interest." This confusion is reflected in the papers before the court, and occasionally in the case law. These concepts are quite different form the concept of real party in interest. Furthermore, there is no doubt in this case that while IndyMac is not the real party In interest (that must join in the motion) it both has standing and is a party in interest.

### a. Party in Interest

"Party in interest" is a very broad concept in bankruptcy. It includes the debtor, creditors, employees, officers of a corporation, professionals active in the case, and many others. In general, a party in interest, in the bankruptcy context, is anyone who is entitled to express a view with respect to a matter before the court. Several opinions have held that a real estate loan servicer is a party in interest with respect to the enforcement of a loan. *See, e.g., Greer v. O'Dell,* 305 F.3d 1297, 1302-03 (11th Cir. 2002).

### b. Standing

It is important to distinguish the "real party in interest" requirement from the "standing" requirement. Standing is constitutional requirement, grounded in Article III of the U.S. Constitution.

#### i. The Standing Requirement

The U.S. Supreme Court has stated the standing requirement as follows: "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n,* 128 S. Ct. 2759, 2768 (2008).

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in

8

standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992).

The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.*

Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits on the class of persons who may invoke the courts' decisional remedial powers. *Id.* at 499. These prudential limitations are self-imposed rules of judicial restraint, and principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. *See In re Newcare Health Corp.* 244 B.R. 167, 170 (B.A.P. 1st Cir. 2000).

### ii. Contrast with Real Party in Interest

In the context of relief from the automatic stay, the requirements of standing and real party in interest are often confused because of the similarity in language between § 362(d) and Rule 17 of the Federal Rules of Civil Procedure. Section 362(d) provides that relief from stay shall be granted "[O]n request of a party in interest." This is a substantive requirement, and it is relatively broad: many parties are parties in interest for the purposes of § 362(d). IndyMac rightly argues that it qualifies as a party in interest for this motion.

The "real party in interest" requirement, on the other hand, is generally regarded as one of many "prudential" considerations that have been "judicially engrafted onto the Article III requirements for standing." *See, e.g., In re Village Rathskeller*, 147 B.R. 665, at 668 (Bankr. S.D.N.Y. 1992). To obtain relief in federal court, a party must meet both the constitutional requirements

(standing) and the prudential requirements (including real party in interest). *Morrow v. Microsoft Corp.* 499 F.3d 1332, 1339 (9th Cir. 2007); *see also Village Rathskeller, Inc.*, 147 B.R. at 668 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975) for the proposition that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations"). A party may have standing – having suffered an "injury in fact" – but this may not make it the real party in interest. *See, e.g., Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992). Conversely, a party may be the real party in interest, but lack standing. *See, e.g., Davis v. Yageo Corp.*, 481 F.3d 661 (9th Cir. 2007).

Given that IndyMac has possession of the note here at issue, no detailed analysis is required to show that it clearly meets the standing requirements. *Accord, In re Conde-Dedonato*, 391 B.R. 247, 250-51 (Bankr. E.D. N.Y. 2008) (standing to file a proof of claim).

This case is thus different from *In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008), where the movant seeking relief from stay failed to show that it ever had any interest in the note at issue. In that case, the court found that the movant lacked standing altogether to bring the motion because it failed to show that the note was ever transferred to it, and thus it had no rights of its own to assert. *See id.* at 266-68; *accord, In re Maisel*, 378 B.R. 19, 20-22 (Bankr. D. Mass. 2007) (denying standing where movant did not acquire note until after filing motion for relief from stay).

### 3. Sua Sponte Raising of Real Party in Interest Issue

IndyMac argues that it is improper for the court to raise *sua sponte* the issue of whether IndyMac is the real party in interest for this motion. The court overrules this objection.

The governing principle on this issue was articulated more than sixty years ago by Judge Learned Hand, perhaps the most distinguished U.S. jurist who never sat on the U.S. Supreme Court. Judge Hand stated: "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert." *United States v. Marzano*, 149 F.2d 923, 925 (2d Cir. 1945).

9

The continuing vitality of this principle is shown in *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 Bankr. 325, 335 (S.D.N.Y. 2008), where the district court quoted this statement from Judge Learned Hand in rejecting a similar attack on the bankruptcy court's *sua sponte* raising the issue of the qualification of a foreign debtor to obtain recognition of a foreign proceeding under § 1517. The district court specifically approved the bankruptcy court's procedure in requiring an evidentiary hearing *sua sponte* (as the court has done in this case), pursuant to which the bankruptcy court had found that the evidence was insufficient to show that the foreign proceeding qualified for recognition as either a main proceeding or a nonmain proceeding.

The propriety of the court's raising *sua sponte* the real party in interest qualifications of IndyMac is specifically supported in addition by the only circuit court decision to address this issue, *Weissman v. Weener*, 12 F.3d 84, 85-86 (7th Cir. 1993), which affirmed the district court's raising *sua sponte* the Rule 17 issue.   IndyMac concedes that this is the Seventh Circuit rule.

IndyMac contends that there is a split among the circuits on this issue, and that the Sixth Circuit has adopted the opposite view in an ancient case, *Kardo Co. v. Adams*, 231 F. 950 (6th Cir. 1916). However, IndyMac (and perhaps the *Weissman* court as well) have misread the *Kardo* case. The issue in *Kardo*, which the trial court raised *sua sponte*, was quite different: whether the corporate plaintiff was in fact a corporation at all, and thus had capacity to sue, in light of its apparently defective incorporation under Ohio law. The circuit court found that the defendant could not raise the lack of corporate status as a defense, under the facts of the case. *See id.* at 959-72.

The circuit court's additional comment in *Kardo*, that the corporation was the real party in interest, is given no analysis at all (after fourteen pages of analysis of the plaintiff's corporate status), and is purely *dicta*. In addition, the court made no reference at all to Equity Rule 37 (the predecessor of Rule 17), which contained the "real party in interest" language now found in Rule 17. This court concludes that the Sixth Circuit's reference to "real party in interest" in *Kardo* is a different

concept from that found in Rule 17, and is of no relevance in this case.

## C. Required Joinder of Parties

Rule 17 is not the end of the procedural difficulties before the court. Movant must also comply with the joinder requirements of Rule 19 by bringing before the court every person with an interest in the note.

Rule 17 must be interpreted together with Rule 19, which requires the joinder of parties in appropriate circumstances. *See* 6A WRIGHT § 1543. IndyMac fails to satisfy the required joinder of parties rule in this case.

Joinder of a person under Rule 19 is required whenever nonjoinder would produce one of the following effects:  (a) nonjoinder prevents complete relief from being accorded among those who are parties to the action; (b) the absentee claims an interest relating to the subject matter of the action and is so situated that disposing of the matter in that person's absence may (i) as a practical matter impair or impede that person's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of that party's interest.[16]   The

---

[16] Rule 19 provides in relevant part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party.
>
> A person who is subject to service of process . . . must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or

10

otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff. . . .

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be

purpose of Rule 19 is "to bring before the court all persons whose joinder would be desirable for a just adjudication" of the matter before the court. 7 WRIGHT § 1604.

It is the (b)(i) alternative that applies in this case. Proceeding with relief from stay without the joinder of the owner of the note makes it impossible (and impractical) to protect the interest of the real owner with respect to the note here at issue. Indeed, the protection of its interest is particularly problematic, given that the FDIC has taken over IndyMac, and the real owner may be reduced to making a claim in the IndyMac receivership instead of collecting on the note.

Unlike Rule 7017 (incorporating the Rule 17 real party in interest rule), Rule 7019 (incorporating Rule 19 by reference) is not applicable automatically to contested matters (including relief from stay motions) in a bankruptcy case. However, after specifying the Part VII rules that apply automatically to contested matters, Rule 9014(c) states: "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." In this case, the court has directed that Rule 7019 applies to this motion for relief from stay.[17]

There is no precise formula for determining whether a particular non-party must be joined under Rule 19(a). The application of the rule turns on the facts of the individual case in light of the general policies of (a) avoiding multiple litigation, (b) providing the parties with complete and effective relief in a single action, and (c) protecting the absent persons form the possible prejudicial effect of

joined if feasible but is not joined; and

(2) the reasons for not joining that person.

[17] Rule 9014 further requires the court to give notice to the parties of an order making any non-specified rule applicable "to afford them a reasonable opportunity to comply with the procedures presecribed by this rule." The court has given this notice to IndyMac, which has refused to join the owner of the note as a party to this motion, and has refused to plead or otherwise state any reasons for its nonjoinder.

deciding the case without them.   7 WRIGHT § 1604.

IndyMac gives no explanation for its failure to join the owner of the note in this motion.   The likely reason is that IndyMac does not know who the owner is, and thus cannot have any authority to join the owner voluntarily.   If IndyMac were the duly authorized loan servicer for the owner, the servicing agreement would presumably authorize IndyMac to join the owner of the note in this motion, and the problem would disappear.  If the servicing agreement did not grant this authority, IndyMac should have obtained authority from the owner to join the owner as a movant in this case.

Consequently, if a loan servicer wishes to seek relief from the automatic stay, either as agent or nominee of the noteholder, the servicer may do so only if the noteholder either joins or ratifies the motion.   Absent joinder or ratification, the noteholder must substitute into the servicer's place, and prosecute the motion on its own.  *See* Fed. R. Civ. P. 17(a)(3).[18]

If the servicer has mistakenly failed to seek relief in the noteholder's name, the court must allow a reasonable time for the noteholder to join or substitute into the action. *Id.*   As stated above, the court has given IndyMac more than two months to join the owner of the note, and IndyMac has failed and refused to do so.

## IV. CONCLUSION

In conclusion, the court finds upon reconsideration that IndyMac is entitled to enforce the secured note here at issue.

However, it must satisfy the procedural requirements of federal law in seeking relief from the automatic stay for this purpose. These requirements include joining the owner of the note on two separate grounds:  it is the real party in interest under Rule 17, and it is a required party under Rule 19.

Because IndyMac has failed and refused to join the owner of the secured note, the motion for relief from stay is denied.

Dated: October 29, 2008

Hon. Samuel L. Bufford
United States Bankruptcy Judge

---

[18] Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

12

1

**PROOF OF SERVICE**

2

3      I certify that a true copy of this **AMENDED OPINION DENYING RELIEF FROM**
**AUTOMATIC STAY** was served on OCT 2 9 2008 2008.

4

5

6    Kang Jin Hwang
     1635 4th Street
7    Los Angeles, California 90019

8    Robert K. Lee, Esq.
     3435 Wilshire Boulevard
9    Suite 2741
     Los Angeles, California 90010
10

11   William G. Malcolm, Esq.
     Malcolm Cisneros, A Law Corporation
12   2112 Business Center Drive
     2nd Floor
13   Irvine, California 92612

14   Sam S. Leslie, Trustee
     6310 San Vicente Boulevard
15   Suite 320
     Los Angeles, California 90048
16

17   U.S. Trustee
     Department of Justice
18   725 South Figueroa Street
     26h Floor
19   Los Angeles, California 90017

20

21

22   Dated:   OCT 2 9 2008

23                                              DEPUTY CLERK

24

25

26

27

28

13

19

| | FOR COURT USE ONLY |
|---|---|
| | **FILED & ENTERED** |
| | NOV 05 2008 |
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY egarcia   DEPUTY CLERK |

| In re:<br>Kang Jin Hwang,<br><br><br>Sam S. Leslie, | Debtor(s).<br><br>Trustee. | CHAPTER:   7<br><br>CASE NO.:   LA-08-15337SB<br>DATE:   September 23, 2008<br>TIME:   9:30 AM<br>CTRM:   1575<br>FLOOR:   15th |
|---|---|---|

## ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362
## (MOVANT: Indymac Bank)

1. The Motion was:   ☐ Contested   ☒ Uncontested   ☐ Not Prosecuted

2. The property (the "Property") to which this Order applies is as follows (specify common description or street address):
   501 Delamere Way, Las Vegas, Nevada 89123

3. The Motion is denied:   ☒ without prejudice   ☐ with prejudice   ☐ on the following grounds:
   ☒ Based upon the findings and conclusions made on the record at the hearing and the amended opinion entered on October 29, 2008.
   ☐ Unexcused non-appearance by Movant
   ☐ Lack of proper service
   ☐ Lack of good cause shown for relief from stay
   ☐ The automatic stay is no longer in effect under:   ☐ 11 U.S.C. § 362(c)(2)(A)   ☐ 11 U.S.C. § 362(c)(2)(B)
   ☐ 11 U.S.C. § 362(c)(3)(A)   ☐ 11 U.S.C. § 362(c)(4)(A)

   ☐ Other (specify):

4. ☐ Movant may not file another motion for relief from the stay in this case absent a court order authorizing re-filing.


Dated:   11/05/2008

_____
UNITED STATES BANKRUPTCY JUDGE

*Revised October 2005*

**F 4001-10.DENY**

Order Denying Motion for Relief from Automatic Stay - Page 2 of 3

| In Re (SHORT TITLE) | CHAPTER:  7 |
|---|---|
| Kang Jin Hwang, | |
| Debtor(s) | CASE NO:  LA-08-15337SB |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that an ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (in whole or in part) was entered on *(specify date)*:

11/05/2008

Dated:   11/05/2008

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: *Elaine J. Garcia*

*Deputy Clerk*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

**F 4001-10.DENY**

Order Denying Motion for Relief from Automatic Stay - Page 3 of 3

| In Re          (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Kang Jin Hwang, | |
| Debtor(s) | CASE NO: LA-08-15337SB |

## SERVICE LIST

Kang Jin Hwang
1635 4th Street
Los Angeles, California 90019

Robert K. Lee, Esq.
3435 Wilshire Boulevard
Suite 2741
Los Angeles, California 90010

William G. Malcolm, Esq.
Malcolm Cisneros, A Law Corporation
2112 Business Center Drive
2nd Floor
Irvine, California 92612

Sam S. Leslie, Trustee
6310 San Vicente Boulevard
Suite 320
Los Angeles, California 90048

U.S. Trustee
Department of Justice
725 South Figueroa Street
26th Floor
Los Angeles, California 90017

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised October 2005

**F 4001-10.DENY**

- 93 -

Escrow Number: **03004020-220-CF1**

## LEGAL DESCRIPTION

LOT TEN (10) IN BLOCK THIRTEEN (13) OF CRYSTAL SPRINGS R-2 NO. 19, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 85 OF PLATS, PAGE 10 AND AS AMENDED BY
CERTIFICATE OF AMENDMENT RECORDED AUGUST 13, 1998 IN BOOK 980813 AS
DOCUMENT NO. 01012 AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED
SEPTEMBER 17, 1998 IN BOOK 980917 AS DOCUMENT NO. 02197, OFFICIAL RECORDS, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

20

1  WILLIAM G. MALCOLM, #129271              E-FILED 11-14-08
   DON ROBINSON #123411
2  KEVIN HAHN, #231579
   MALCOLM ♦ CISNEROS
3  2112 Business Center Drive
   2nd Floor
4  Irvine, California 92612
   Telephone:    (949) 252-9400
5  Telecopier:   (949) 252-1032

6  Counsel for Appellant FDIC as
   Conservator for INDYMAC FEDERAL BANK
7

8           UNITED STATES BANKRUPTCY COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10              LOS ANGELES DIVISION

11 In re:                        Case No. LA 08-15337 SB

12 KANG JIN HWANG,
                                 [Chapter 7]
13           Debtor.
                                 NOTICE OF APPEAL
14

15      FDIC as Conservator for IndyMac Federal Bank, the

16 Movant, appeals under 28 U.S.C. § 158(a) or (b) from the Order

17 Denying Motion for Relief from the Automatic Stay under 11

18 U.S.C. § 362 entered by the Bankruptcy Judge in this contested

19 matter on November 5, 2008 (the "Order"). A true and correct

20 copy of the Order is attached and incorporated as Exhibit "1."

21      The names of all parties to the order appealed from

22 and the names, addresses, and telephone numbers of their

23 respective attorneys are as follows:

24      Debtor
        Kang Jin Hwang
25

26

27

28

1

2  **Debtor's Attorneys**
Robert K. Lee

3  3435 Wilshire Boulevard, Suite 2741
Los Angeles, CA 90019

4  Phone Number (213) 384-6900
Fax Number (213) 384-6996

5  **Trustee**
Sam Leslie

6  Leslie, Engell & Associates LLP

7  6310 San Vicente Blvd., Suite 320
Los Angeles, CA 90048

8  Phone number: (323) 549-6900
Fax number: (323)549-6905

9
     Not represented by an attorney

10

11  **Movant**
FDIC as Conservator for IndyMac Federal Bank

12

13  **Movant's Attorneys**
William G. Malcolm

14  Don Robinson
Kevin Hahn

15  MALCOLM • CISNEROS

16  2112 Business Center Drive
2nd Floor

17  Irvine, California 92612
Phone number:  (949) 252-9400

18  Fax number:   (949) 252-1032

19  Dated: November 14, 2008

20
                              MALCOLM ♦ CISNEROS

21                            A Law Corporation

22                            /s/ William G. Malcolm

23

24                            WILLIAM G. MALCOLM
Attorneys for Appellant

25                            FDIC as Conservator for
INDYMAC FEDERAL BANK

26

27

28

|  | FOR COURT USE ONLY |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | **FILED & ENTERED**<br><br>NOV 05 2008<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY egarcia   DEPUTY CLERK |

| In re:<br>Kang Jin Hwang,<br><br><br>Sam S. Leslie, | CHAPTER:      7 |
|---|---|
| Debtor(s). | CASE NO.:    LA-08-15337SB |
| Trustee. | DATE:           September 23, 2008<br>TIME:           9:30 AM<br>CTRM:          1575<br>FLOOR:         15th |

## ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362
## (MOVANT: Indymac Bank)

1. The Motion was:    ☐ Contested    ☒ Uncontested    ☐ Not Prosecuted

2. The property (the "Property") to which this Order applies is as follows (specify common description or street address):
501 Delamere Way, Las Vegas, Nevada 89123

3. The Motion is denied:    ☒ without prejudice    ☐ with prejudice    ☐ on the following grounds:
    ☒ Based upon the findings and conclusions made on the record at the hearing and the amended opinion entered on October 29, 2008.
    ☐ Unexcused non-appearance by Movant
    ☐ Lack of proper service
    ☐ Lack of good cause shown for relief from stay
    ☐ The automatic stay is no longer in effect under:    ☐ 11 U.S.C. § 362(c)(2)(A)    ☐ 11 U.S.C. § 362(c)(2)(B)
                                                                                              ☐ 11 U.S.C. § 362(c)(3)(A)    ☐ 11 U.S.C. § 362(c)(4)(A)

    ☐ Other (specify):

4. ☐ Movant may not file another motion for relief from the stay in this case absent a court order authorizing re-filing.

Dated:    11/05/2008

_____
UNITED STATES BANKRUPTCY JUDGE

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised October 2005

# F 4001-10.DENY

EXHIBIT 1

Order Denying Motion for Relief from Automatic Stay - Page 2 of 3

| In Re | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| Kang Jin Hwang, | | Debtor(s) | CASE NO: LA-08-15337SB |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

**TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:**

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that an ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (in whole or in part) was entered on *(specify date)*:

11/05/2008

Dated:   11/05/2008

JON D. CERETTO
**Clerk of the Bankruptcy Court**

By:

*Deputy Clerk*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised October 2005*

**F 4001-10.DENY**

EXHIBIT 1
- 98 -