| In Re             (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Kang Jin Hwang,                          Debtor(s) | CASE NO:  LA-08-15337SB |

## SERVICE LIST

Kang Jin Hwang
1635 4th Street
Los Angeles, California 90019

Robert K. Lee, Esq.
3435 Wilshire Boulevard
Suite 2741
Los Angeles, California 90010

William G. Malcolm, Esq.
Malcolm Cisneros, A Law Corporation
2112 Business Center Drive
2nd Floor
Irvine, California 92612

Sam S. Leslie, Trustee
6310 San Vicente Boulevard
Suite 320
Los Angeles, California 90048

U.S. Trustee
Department of Justice
725 South Figueroa Street
26th Floor
Los Angeles, California 90017

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised October 2005

**F 4001-10.DENY**

EXHIBIT 1
- 99 -

Escrow Number: **03004020-220-CF1**

### LEGAL DESCRIPTION

LOT TEN (10) IN BLOCK THIRTEEN (13) OF CRYSTAL SPRINGS R-2 NO. 19, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 85 OF PLATS, PAGE 10 AND AS AMENDED BY
CERTIFICATE OF AMENDMENT RECORDED AUGUST 13, 1998 IN BOOK 980813 AS
DOCUMENT NO. 01012 AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED
SEPTEMBER 17, 1998 IN BOOK 980917 AS DOCUMENT NO. 02197, OFFICIAL RECORDS, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 2112 Business Center Drive, Second Floor, Irvine, California 92612.

On November 14, 2008 I served the following document described as:

**NOTICE OF APPEAL**

On the following interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[x ]   <u>VIA MAIL -- CCP §§ 1013(a); 2015.5</u>: By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the date following ordinary business practices.  I am readily familiar with my firm's business practice and collection and processing of mail with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Irvine, California, with postage thereon fully prepaid that same day in the ordinary course of business.

[ ]   <u>VIA FACSIMILE</u>: By faxing a true copy thereof to the Facsimile Number indicated above, and obtaining a confirmation receipt that the transmission of the document was successful.

[ ]   <u>VIA OVERNIGHT DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next business day envelope, and placing each for collection and mailing on said date following ordinary business practices.

[]   <u>VIA PERSONAL DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next envelope, and causing such envelope to be personally delivered to the address listed on the attached service list.  A separate proof of service by the party who delivered the envelope is available upon request.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.  Executed November 14, 2008 at Irvine, California.

MELISSA D. FUSCO

MDF:/HWANG POS.wpd

1

**In re: KANG JIN HWANG**
**CASE NUMBER: LA 08-15337 SB**
**SERVICE LIST**

2

3

**ATTORNEY FOR DEBTOR:**

4
Robert K. Lee, Esq.
3435 Wilshire Boulevard, Suite 2741

5
Los Angeles, CA 90019

6
**CHAPTER 7 TRUSTEE:**
Sam Leslie

7
LESLIE, ENGELL & ASSOCIATES LLP
6310 San Vicente Boulevard, Suite 320

8
Los Angeles, CA 90048

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MDF:/HWANG POS.wpd

21

1   WILLIAM G. MALCOLM, #129271                    E-FILED 11-14-08
    DON ROBINSON, #123411
2   KEVIN HAHN, #231579
    MALCOLM ♦ CISNEROS
3   2112 Business Center Drive
    2nd Floor
4   Irvine, California 92612
    Telephone:     (949) 252-9400
5   Telecopier:    (949) 252-1032

6   Counsel for Appellant FDIC as
    Conservator for INDYMAC FEDERAL BANK
7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      LOS ANGELES DIVISION

11  In re:                         Case No. LA 08-15337 SB

12  KANG JIN HWANG,

13            Debtor.             [Chapter 7]

                                   APPELLANT'S ELECTION TO TRANSFER
14                                 APPEAL TO DISTRICT COURT
                                   PURSUANT TO FEDERAL RULE OF
15                                 BANKRUPTCY PROCEDURE 8001(e)

16

17          Pursuant to Rule 8001(e) of the Federal Rules of

18  Bankruptcy Procedure, Appellant FDIC as Conservator for IndyMac

19  Federal Bank hereby elects to transfer its appeal in the above-

20  captioned case to the United States District Court for the

21  Central District of California.

22  Dated: November 14, 2008

23

24                              MALCOLM ♦ CISNEROS
                                A Law Corporation

25                              /s/ William G. Malcolm

26                              _____
                                WILLIAM G. MALCOLM
27                              Attorneys for Appellant
                                FDIC as Conservator for
28                              INDYMAC FEDERAL BANK

                                -103-

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action. My business address is 2112 Business Center Drive, Second Floor, Irvine, California 92612.

On November 14, 2008 I served the following document described as:

**APPELLANT'S ELECTION TO TRANSFER APPEAL TO DISTRICT COURT**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8001(e)**

On the following interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[x ]   <u>VIA MAIL -- CCP §§ 1013(a); 2015.5</u>: By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the date following ordinary business practices. I am readily familiar with my firm's business practice and collection and processing of mail with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Irvine, California, with postage thereon fully prepaid that same day in the ordinary course of business.

[ ]   <u>VIA FACSIMILE</u>: By faxing a true copy thereof to the Facsimile Number indicated above, and obtaining a confirmation receipt that the transmission of the document was successful.

[ ]   <u>VIA OVERNIGHT DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next business day envelope, and placing each for collection and mailing on said date following ordinary business practices.

[ ]   <u>VIA PERSONAL DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next envelope, and causing such envelope to be personally delivered to the address listed on the attached service list. A separate proof of service by the party who delivered the envelope is available upon request.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Executed November 14, 2008 at Irvine, California.

MELISSA D. FUSCO

MDF:/HWANG POS.wpd

1

**In re: KANG JIN HWANG
CASE NUMBER: LA 08-15337 SB
SERVICE LIST**

2

3

**ATTORNEY FOR DEBTOR:**
4  Robert K. Lee, Esq.
3435 Wilshire Boulevard, Suite 2741
5  Los Angeles, CA 90019

6  **CHAPTER 7 TRUSTEE:**
Sam Leslie
7  LESLIE, ENGELL & ASSOCIATES LLP
6310 San Vicente Boulevard, Suite 320
8  Los Angeles, CA 90048

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MDF:/HWANG POS.wpd

**22**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

In Re:                              )  Case No. LA08-15337-SB
                                    )
KANG JIN HWANG,                     )  Los Angeles, California
                                    )  Tuesday, July 15, 2008
            Debtor.                 )  9:30 a.m.
_____)

HEARING RE: [8] NOTICE OF
MOTION AND MOTION FOR RELIEF
FROM THE AUTOMATIC STAY WITH
SUPPORTING DECLARATIONS REAL
PROPERTY RE: 501 DELAMERE WAY,
LAS VEGAS, NV 89123


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SAMUEL BUFFORD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Moving Party,            KEVIN HAHN, ESQ.
Indymac Bank:                    Malcolm Cisneros
                                 2112 Business Center Drive
                                 Second Floor
                                 Irvine, California 92612
                                 (949) 252-9400


Court Recorder:                  Earnestine Walter
                                 United States Bankruptcy Court
                                 Edward R. Roybal Federal
                                  Building
                                 255 East Temple Street
                                 Los Angeles, California 90012






Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

1 | Transcriber:                        Sherri Lattuca
                                        Echo Reporting, Inc.
2                                       6336 Greenwich Drive,  Suite B
                                        San Diego, California  92122
3                                       (858) 453-7590

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

iii

1                        I N D E X

2   WITNESSES                DIRECT   CROSS   REDIRECT   RECROSS

3   Erica A. Johnson-Sect       3      --       --        --

4

5

6   EXHIBITS                          IDENTIFIED   RECEIVED

7   Plaintiff's:

8     2     Bank note held by Indymac Bank      12          --

9     3     Copy of assignment of deed of        14          --
            trust

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

1

<u>LOS ANGELES, CALIFORNIA TUESDAY, JULY 15, 2008 9:30 AM</u>

--oOo--

(Call to order of the Court.)

THE COURT:  Number four, Kang Jin Hwang.

MR. HAHN:  Good morning, your Honor.  Kevin Hahn of Malcolm Cisneros, appearing on behalf of the moving party, Indymac Bank, which is now known as Indymac Federal Bank by virtue of its takeover by the FDIC late last Friday.

Ms. Erica Johnson-Sect is present in the courtroom and prepared to testify.  I wonder if we should put this on second call, your Honor?

THE COURT:  Let's put it on second call.  What's the status of your client, sir?  Is it the same client or is it a different one?

MR. HAHN:  Well, the --

THE COURT:  Do you represent the successor to Indymac Bank or don't you?

MR. HAHN:  I believe we do.  We still need to clarify that.

THE COURT:  Okay, so --

MR. HAHN:  I believe they would want us to proceed.

THE COURT:  Okay.  Well, we'll proceed in due course with the testimony, but we'll need to get that clarified before I can make a ruling on this.

2

1          MR. HAHN:  Thank you, your Honor.

2          THE COURT:  Thank you, sir.

3     (Pause while the Court heard other matters.)

4          THE COURT:  That brings us back to number four,

5  Kang Hwang.

6          MR. HAHN:  Good morning again, your Honor.   Kevin

7  Hahn for the moving party.

8          Your Honor, I had a chance to review the Court's

9  tentative and reluctantly I would have to concede that

10  perhaps the new entity may need to be substituted in,

11  technically, for the order to have its proper effect.

12          Ms. Johnson-Sect has flown in, last night.  She's

13  here, prepared to testify, and --

14          THE COURT:  Let's go ahead and take her testimony,

15  sir.  You want to call your witness?

16          MR. HAHN:  Sure, Ms. Erica Johnson-Sect, please

17  take the stand.

18          THE COURT:  You need to go around this way, ma'am.

19          MR. HAHN:  Your Honor, as the Court may recall, at

20  the prior hearing I presented the Court with the original

21  endorsed note which I believe the Court was satisfied with.

22  I do have the original note once again if needed.

23          THE COURT:  Very well.

24     ERICA A. JOHNSON-SECT - PLAINTIFF'S WITNESS - SWORN

25          THE CLERK:  Please state your full name for the

3

1   record.

2              THE WITNESS:   Erica A. Johnson-Sect.

3                       DIRECT EXAMINATION

4   BY MR. HAHN:

5   Q     Ms. Johnson, can you please state the name of your

6   employer for the record?

7   A     Indymac Federal Bank.

8   Q     State your position at Indymac Federal Bank, please.

9   A     Vice president, bankruptcy and foreclosure.

10  Q     How long have you been employed by Indymac Bank in your

11  current position?

12  A     One year, six months.

13  Q     Do you still hold the same position with Indymac

14  Federal Bank as you did with Indymac Bank prior to the

15  takeover?

16  A     Yes.

17  Q     How many years have you worked in the mortgage default

18  industry?

19  A     About 17 years.

20  Q     Can you briefly describe your employment history and

21  experience in the industry prior to your employment with

22  Indymac?

23  A     Yes, I started with World Savings and Loan in San

24  Leandro, California.  Relocated to San Antonio, Texas, and

25  helped to get the bankruptcy and foreclosure group started.

4

1  In that capacity I was a unit lead and by the time I left

2  World Savings I was a -- I was a manager.  I went to Bank

3  United and I was the assistant vice president of bankruptcy

4  and compliance.  I worked for Fanny Mae for eight and a half

5  years prior to coming to Indymac Bank as a servicing

6  consultant.

7  Q      In your position as a vice president, can you tell us

8  what you're responsible for?

9  A      My biggest responsibility is to ensure that we are

10  servicing the loans as per the investor guidelines, ensuring

11  that we're giving our borrowers the best options to bring

12  their loan current prior to proceeding with foreclosure, and

13  making sure that we've turned over every stone.  Loss

14  mitigation -- although I'm not the vice president of loss

15  mitigation, it is the responsibility of everyone, especially

16  in a market like we're in today, and primarily to make sure

17  that there are no losses to -- for the borrower, for the

18  bank, for the investors.

19  Q      Can you explain who you have supervision over?

20  A      I have three managers and 35 staff.

21  Q      And they all work in the bankruptcy foreclosure

22  department?

23  A      Yes, and a high risk group, a forensic high risk

24  research group.

25  Q      Thank you.  Do you understand that you are here to

*Echo Reporting, Inc.*

5

1  testify on Indymac's motion for relief from stay in the

2  bankruptcy case of Kang Jin Hwang?

3  A    Yes.

4  Q    Do you understand you are here to testify as to the

5  accuracy of the Debtor's financial situation -- financial

6  loan information as provided in your declaration?

7  A    Yes.

8        MR. HAHN:  Your Honor, may I present the witness

9  with a copy of the motion, including her declaration and

10 exhibits?

11       THE COURT:  Very well, yes, sir.  You may

12 approach, sir.  You have to go this way.

13    (Witness proffered documents.)

14       THE WITNESS:  Thank you.

15 BY MR. HAHN:

16 Q    Before we get into the specifics of the declaration, I

17 want to ask some questions about Indymac's record-keeping

18 system as it pertains to the Debtor.

19    Please describe your familiarity with the record-

20 keeping system that Indymac uses to track loans like the

21 Debtor's.

22 A    The computer system that we use at Indymac Bank is the

23 same system that I have used on and off for 17 years, so I'm

24 -- I consider myself very familiar with the system.

25    We -- what the system does is as a payment comes in,

*Echo Reporting, Inc.*

-6-

1  whether it's from a lock box or a borrower brings it into

2  the branch or they mail in a check, our Kalamazoo, Michigan

3  office handles -- the cashiering group handles the actual

4  payment application.  All payments are posted if they're

5  received by a certain cutoff date per the depository

6  guidelines.  Any payment received after that cutoff time is

7  noted in the system that the payment was received but not

8  posted to the account.

9  Q    So are payments recorded that same day unless they miss

10 the cutoff?

11 A    Yes, payments are recorded that very same day.

12          THE COURT:  What happens then with the payment

13 that doesn't miss the cutoff date?  Or that does miss the

14 cutoff date?

15          THE WITNESS:  The note --

16          THE COURT:  When is it posted?

17          THE WITNESS:  The very next day.

18          THE COURT:  Okay.

19          THE WITNESS:  If it's a business day.

20 BY MR. HAHN:

21 Q    Can you describe further how the system works?

22 A    So for -- if the loan -- if the money is posted to the

23 account that very same day, we see a task -- it's realtime

24 that lets everyone who has access to the system know that a

25 payment has come in.  There is an overnight batch process.

*Echo Reporting, Inc.*

7

1   So the loan won't show the posting of the payment and the

2   new due date until the following day.

3        For a loan where the payment is not posted that same

4   day because it misses the cutoff, that same task is there

5   for everyone to see and the same rule applies.  The next

6   business day it's actually posted to the account but it's

7   reflected for everyone to see the following day.

8        The task -- we use that task, especially from a default

9   capacity, to ensure that we don't proceed with foreclosure

10  on a loan and there's funds possibly floating around.  We

11  also use the same task to let us -- same types of task to

12  let us know if there's any type of payment dispute or

13  concern from the borrower that a payment may have been lost

14  in the mail.  These type of tasks are prudent in -- on the

15  default side for ensuring that we don't proceed.

16  Q    Is everything you're describing to us today part of

17  your regular business practice?

18  A    Yes.

19  Q    Who has the access to these computer records, as it

20  relates to the default and bankruptcies?

21  A    Every employee of Indymac Bank has access -- not every

22  employee -- if it's your business in the servicing area, has

23  access to view.  There's certain access cutoffs based on

24  your level and what -- and for separation of duties.  The

25  same person that applies the payments can't be the same

*Echo Reporting, Inc.*

1 person that batches the payments and posts the payments.

2     And as it relates to a default capacity, most of the

3 folks on the default side have access to notate the system.

4 Nobody has access to delete notes or erase notes.  So

5 depending on the level and what department you're in,

6 depends on the security you have to the system.

7 Q    You've begun to explain the process a little bit, but

8 could you explain in further detail what sorts of measures

9 are in place to ensure that these records are accurate and

10 not changed without authority?

11 A    From a cashiering standpoint, the batch -- there's a

12 batching and -- excuse me, batching and balancing process

13 that happens every night, and the folks that work in the

14 cashiering department don't have your typical hours because

15 they can't leave for the day until they are -- it's a bank,

16 even though we're, you know, a back office bank-type

17 operation, so no one leaves for the day until the batches

18 are balanced.  If there isn't something -- you know, can't

19 be reconciled that night, then it elevates and they have a

20 research team, a specific research team, to make sure that

21 it does get balanced within 48 hours.

22 Q    When an individual files for bankruptcy and there is a

23 default, can you lead us through the process that takes

24 place?

25 A    It depends on the Chapter.  If the loan is delinquent,

1   meaning it's in foreclosure, and the borrower files

2   bankruptcy, if it's a Chapter Seven we are required by our

3   investors to immediately proceed with filing a motion,

4   anything 65 days plus delinquent.

5       On a Chapter 13 we wait, excuse me, until it's post-

6   petition delinquent 65 days before we begin to review it for

7   a motion.

8   Q    And once it gets reviewed for a motion, what occurs at

9   that point?

10  A    We do have an out source vendor but we -- my bankruptcy

11  specialists review the loans and determine which loans

12  require a motion to be filed.  They send an intercom to

13  Fidelity so that they can begin the referral process to the

14  attorneys.  Prior to sending that intercom, they do an audit

15  of the loan to make sure that the payment posting is

16  accurate, especially on a 13, making sure that none of the

17  funds were co-mingled, that all the payments that were

18  received were applied, that it's not a trust deed pay all

19  district and -- they just really ensure that the accounting

20  is accurate before we go ahead and file the motion.

21          The intercom is then sent to Fidelity, "Go ahead

22  and send the motion to the firm."  The firm prepares a

23  declaration, it comes back to me for signature.  I do a

24  look-see to make sure that from the time my bankruptcy

25  specialists reviewed the loan and the declaration is in my

*Echo Reporting, Inc.*

1 hand that a payment didn't come in that is now not reflected

2 on the declaration. If a payment does come in, we make --

3 we communicate so that we let our firms know that a payment

4 came in and we need to amend what we were previously going

5 to file.

6     If all is well, before I sign it I send it back to my

7 bankruptcy specialists who does a mini scrub, basically

8 something similar to what they already completed. And then

9 I sign and then it goes back -- goes back to the firms.

10     Fidelity does have a process themselves where they

11 scrub files too, prior to referring them to the firm, but we

12 want to be extra cautious in ensuring that we're filing

13 appropriate motions.

14 Q   Do you have any reason --

15     THE COURT: Counsel, there are a couple of things

16 I don't understand here. I don't understand "the intercom",

17 I don't understand the reference to Fidelity.

18 BY MR. HAHN:

19 Q   Could you -- could you explain that further?

20 A   As our out source vendor, Fidelity -- we employ

21 Fidelity to help us with ensuring that the process of the

22 bankruptcy and foreclosure filing is happening within the

23 prescribed timelines.

24     THE COURT: So what do they do?

25     THE WITNESS: So, in this --

*Echo Reporting, Inc.*

1          THE COURT:  Who is Fidelity and what do they do?

2          THE WITNESS:  Fidelity is our out source vendor.

3          THE COURT:  Fidelity what?  There are lots of

4    Fidelities.

5          THE WITNESS:  Fidelity National Default Services.

6    They're a vendor and as it relates to a loan in bankruptcy,

7    they will monitor the filings while they're with the

8    bankruptcy attorneys to make sure that nothing has fallen

9    through the cracks, to ensure that motions are being filed

10   timely.  They follow up on the proofs of claims, make sure

11   that they're being filed and follow up to make sure that the

12   plan confirmation dates are happening as they should.  They

13   notate their system of record with the types of things that

14   they follow up on.  We feed off of that information.  But we

15   have our own processes in-house to not only manage our

16   vendor, but to manage the portfolio because it is our

17   responsibility.

18         THE COURT:  All right.  Do they have a computer

19   system that you use?

20         THE WITNESS:  Yes, they have a web service that we

21   use.

22         THE COURT:  And to what extent do you use their

23   service as opposed to your own computer program?

24         THE WITNESS:  Our system is the system of record.

25   We don't use their system for anything but for their system

*Echo Reporting, Inc.*

1 to upload data into ours.  For example, if they're following

2 up on a motion that has yet to be filed and they send -- an

3 intercom is an e-mail.  They send an e-mail to the firm

4 requesting status of the filing of the proof of claim.  That

5 information will load into our system so that we can see

6 that they have followed up on that, so we don't need to

7 follow up on that information.  But we don't rely on their

8 records for our -- to make business decisions.

9              THE COURT:  The records, the payment records, do

10 those go through your computer or their computer?

11              THE WITNESS:  Ours.

12              THE COURT:  Okay.

13              THE WITNESS:  They don't have access to that.

14              THE COURT:  Okay.  Go ahead, sir.

15 BY MR. HAHN:

16 Q    Do you have any -- do you have any reason to believe

17 that the Debtor disputes the accounting on the loan?

18 A    No.

19 Q    Do you have any reason to believe the Debtor disputes

20 that Indymac is the rightful holder of the note?

21 A    No.

22 Q    Are you familiar with the loan account for the Debtor,

23 Kang Jin Hwang, specifically?

24 A    Yes.

25 Q    Okay, I'd like to draw your attention to Exhibit Two of

1  the motion, the note.  Is that a true and correct copy of

2  the note that Indymac is the holder of?

3  A    Yes.

4  Q    Is Indymac Bank the rightful holder of the note?

5  A    Yes.

6  Q    Was the note in the possession of Indymac or Indymac's

7  counsel at the time you signed your declaration?

8  A    Yes.

9  Q    Okay.  Turning to the last page of your declaration, is

10 that your signature that's shown there?

11 A    Yes.

12 Q    Were you able to confirm the total amount of Indymac's

13 claim in the amount of over 404,000, as of April 28th, as

14 you stated in your declaration?

15 A    Yes.

16 Q    Were you able to confirm the delinquency amount of over

17 23,000 as stated in your declaration at that time?

18 A    Yes.

19 Q    To your knowledge, has the Debtor made any further

20 payments since the filing of the motion or your declaration?

21 A    No.

22        MR. HAHN:  Thank you.  Your Honor, I have no

23 further questions.

24        THE COURT:  Counsel, I haven't heard you elicit

25 any testimony about the deed of trust.

*Echo Reporting, Inc.*

1          MR. HAHN:   The deed of trust?

2          THE COURT:   Yes.   I assume that the relief from

3    stay you're seeking is not to file a lawsuit against the

4    Debtor but to enforce the deed of trust.

5          MR. HAHN:   Yes.

6    BY MR. HAHN:

7    Q    Ms. Johnson-Sect, are you -- has the deed of trust been

8    assigned to Indymac Bank?

9    A    Yes.

10   Q    Is Indymac Bank the proper secured party, as far as you

11   are aware?

12   A    Yes.

13   Q    Has the assignment of the deed of trust been recorded?

14   A    Yes.

15   Q    If you turn to Exhibit One, the back of Exhibit One --

16   Exhibit Three, I'm sorry.   Is that a true and correct copy

17   of the assignment of the deed of trust?

18   A    Yes.

19         MR. HAHN:   No further questions, your Honor.

20         THE COURT:   Ma'am, you made reference to

21   investors.   Are there any investors involved in this loan?

22         THE WITNESS:   Yes.

23         THE COURT:   What investors are there and what's

24   their role?

25         THE WITNESS:   Freddie Mac.

1        THE COURT:  And what is its role?

2        THE WITNESS:  It -- Indymac Bank sold the loan to

3  Freddie Mac and services the loan for Freddie Mac.

4        THE COURT:  So Indymac is no longer the owner of

5  the loan?

6        THE WITNESS:  No.

7        THE COURT:  Looks like you've got something to

8  clarify here, counsel.

9  BY MR. HAHN:

10 Q    Technically, is Indymac the holder of the note?

11 A    Yes.

12 Q    Is Indymac authorized to act on behalf of Freddie Mac?

13 A    Yes.

14 Q    Why, to your knowledge, is Freddie Mac not the moving

15 party in this motion?

16 A    Their charter prohibits them from being named in

17 motions for foreclosure sales and such.

18        THE COURT:  We need some more clarification,

19 counsel.  I heard testimony this note no longer belongs to

20 Indymac but is sold to -- was sold to Freddie Mac.  In which

21 case, we seem to have the wrong moving party here.

22        MR. HAHN:  Well, your Honor, as the witness has

23 sated, Freddie Mac is not authorized to --

24        THE COURT:  That's its problem.  It doesn't mean a

25 stranger can come instead and act on its behalf.

*Echo Reporting, Inc.*

16

1          MR. HAHN:  Well, Indymac is the servicer on the

2 note and it's servicer for Freddie Mac on this note.

3          THE COURT:  It's not the real party in interest,

4 sir.  The owner is the real party in interest.

5          MR. HAHN:  Your Honor, I -- perhaps that's

6 something that we need to clarify further.  Don't know that

7 I can do that fully today.

8          THE COURT:  You have anymore testimony you want

9 Ms. Erica Johnson-Sect to give?

10         MR. HAHN:  No, your Honor.

11         THE COURT:  Okay, you may step down, ma'am.

12    (Witness was excused.)

13         MR. HAHN:  Your Honor, if the Court doesn't

14 require anymore testimony from Ms. Johnson-Sect, I would

15 request perhaps a continuance to clarify those issues,

16 assuming that they can be.

17         THE COURT:  Very well, shall we set a further

18 hearing?  How long do you need for that, sir?

19         MR. HAHN:  Perhaps 30 days, your Honor.

20         THE COURT:  Shall we make it August 26th at 9:30?

21         MR. HAHN:  Yes, your Honor.

22         THE COURT:  Okay, very well.  Anything further

23 today, sir?

24         MR. HAHN:  I'm sorry?

25         THE COURT:  Anything further today?

*Echo Reporting, Inc.*

17

1          MR. HAHN:  No, your Honor.

2          THE COURT:  Very well.  Thank you, sir.

3          MR. HAHN:  Thank you.

4          THE COURT:  Just to let you know, sir, it appears

5   that apart from the ownership of the note, that you've

6   covered the matters of concern to the Court.

7          MR. HAHN:  Thank you.

8       (Proceeding concluded.)

9

10         I certify that the foregoing is a correct

11  transcript to the best of my ability from the electronic

12  sound recording of the proceedings in the above-entitled

13  matter.

14

15  _____        _____
    Transcriber                    Date

16

17  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

18  _____
    L.L. Francisco, President

19  Echo Reporting, Inc.

20

21

22

23

24

25

*Echo Reporting, Inc.*

23

1              UNITED STATES BANKRUPTCY COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                  --oOo--

4  In Re:                 )  Case No. LA08-15337-SB
                        )
5  KANG JIN HWANG,       )  Los Angeles, California
                        )  Tuesday, August 26, 2008
6        Debtor.       )  9:30 a.m.

7  _____)

8                           HEARING: [8] NOTICE OF MOTION
                            AND MOTION FOR RELIEF FROM THE
9                            AUTOMATIC STAY WITH SUPPORTING
                            DECLARATIONS REAL PROPERTY RE:
10                          501 DELAMERE WAY, LAS VEGAS,
                            NEVADA 89123
11

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SAMUEL BUFFORD
13           UNITED STATES BANKRUPTCY JUDGE

14  APPEARANCES:

15  For the Movant:           KEVIN HAHN, ESQ.
                        Malcolm & Cisneros
16                      2112 Business Center Drive
                      Second Floor
17                      Irvine, California  92612
                      (949) 252-9400

18  Court Recorder:           Christelle Y. Knox
                      United States Bankruptcy Court
19                      Edward R. Roybal Federal
                       Building
20                      255 East Temple Street
                      Los Angeles, California  90012
21

22

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.



ii

1 | Transcriber:

Shonna D. Mowrer
Echo Reporting, Inc.
2 | 6336 Greenwich Drive, Suite B
San Diego, California   92122
3 | (858) 453-7590

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

1

1   LOS ANGELES, CALIFORNIA TUESDAY, AUGUST 26, 2008 9:30 A.M.

2                          --oOo--

3       (Call to order of the Court.)

4           THE COURT:  Number 12, Kang Jin Hwang.

5           MR. HAHN:  Good morning, your Honor.  Kevin Hahn

6   for the moving party.

7           Your Honor, we submitted some additional pleadings

8   on Friday.  I don't know if the Court has had an opportunity

9   to review those.

10          THE COURT:  They weren't timely, sir.  We haven't

11  seen them.

12          MR. HAHN:  Your Honor, I'd ask for a short

13  continuance to deal with those pleadings.  We filed a

14  substitution --

15          THE COURT:  When did you deliver them to chambers,

16  sir?

17          MR. HAHN:  They should have been delivered on

18  Friday, your Honor.

19          THE COURT:  Let me see the papers for 12.

20          MR. HAHN:  We filed a supplemental memorandum of

21  points and authorities, supplemental declaration and a

22  notice of substitution of movant.

23          THE COURT:  Okay.  We did get them.  Okay.

24  Substitution -- one -- the substitution solves the proper

25  parties problem with respect to Indy Mac.

2

1      And the supplemental memorandum, as I said, is not

2  timely.  I haven't had a chance to look at it.

3      MR. HAHN:  Could we get a short continuance, your

4  Honor?

5      THE COURT:  I don't see that your brief addresses

6  a real party in interest issue, sir.

7      MR. HAHN:  Your Honor, the brief was intended to

8  deal with that specific issue.

9      THE COURT:  Can you tell me where to look in the

10  brief for it, sir?  I don't see it.

11      MR. HAHN:  The issue of -- it addresses the issue

12  of whether the servicer can be the real party in interest.

13      THE COURT:  Where, sir?  What page and line do I

14  look at?

15      MR. HAHN:  The discussion, your Honor, that starts

16  on page two.

17      THE COURT:  Where in that discussion, sir?  I

18  don't see it anywhere.

19      MR. HAHN:  Your Honor, the entire -- entire

20  discussion section deals with the case law supporting that

21  position.

22      THE COURT:  Maybe you could tell me a page and

23  line to look at, sir.  I don't see it anywhere.  I see a

24  discussion of standing, but I don't see a discussion of real

25  party in interest.  Those are two very different matters.

3

1   Real party in interest is your problem.  It does not appear
2   you've addressed it.
3          MR. HAHN:  I have nothing further to add on that
4   issue, your Honor, if -- the FDIC has to be the party --
5   proper party to bring this motion, and that's our position.
6   Freddy Mac can't be substituted in.
7          THE COURT:  Well, you want to brief the issue,
8   sir, or shall I deny the motion for failure to -- for real
9   party in interest failure to make a motion before the Court?
10          MR. HAHN:  I'll take the time to brief the issue,
11   your Honor.
12          THE COURT:  Okay.  How long will that take, sir?
13          MR. HAHN:  We could have it in about a week, so a
14   continuance in about two to three weeks would be fine.
15          THE COURT:  Okay.  When do you propose to file
16   your brief, sir?
17          MR. HAHN:  We'll have it filed by next Tuesday,
18   your Honor.
19          THE COURT:  Okay.  Late brief is not going to be
20   tolerated again, sir.  September 9 at 9:30 brief is due.
21   Deposit it in the box at the corner of the courtroom no
22   later than September 2.
23          MR. HAHN:  Your Honor, does the Court require more
24   testimony from Ms. Johnson's side?  I noticed that on the
25   tentative.

4

1          THE COURT:  I don't remember, sir.  We need to

2  look at a transcript to see.

3          MR. HAHN:  Okay.

4          THE COURT:  Have you provided a transcript?

5          MR. HAHN:  No, your Honor.

6          THE COURT:  We'll need the transcript as well.

7  Can you get the transcript by then?

8          MR. HAHN:  We'll try, your Honor.  I don't -- I'm

9  not familiar with how long that takes, but --

10          THE COURT:  Well, if you're not going to do your

11  own, it isn't going to be here by the -- timely for -- it

12  looks like we need some further time.

13      (Proceedings concluded.)

14

15

16

17          I certify that the foregoing is a correct

18  transcript from the electronic sound recording of the

19  proceedings in the above-entitled matter.

20

21  _____          _____
    Transcriber                   Date  12-16-08

22

    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
23

24  _____
    L.L. Francisco, President
25  Echo Reporting, Inc.

*Echo Reporting, Inc.*

**24**

1          -          UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                        --oOo--

4  In Re:                    )  Case No. LA08-15337-SB
                             )
5  KANG JIN HWANG,           )  Los Angeles, California
                             )  Tuesday, September 23, 2008
6          Debtor.           )  9:30 a.m.
   _____)

7
                             HEARING: [8] NOTICE OF MOTION
8                            AND MOTION FOR RELIEF FROM THE
                             AUTOMATIC STAY WITH SUPPORTING
9                            DECLARATIONS REAL PROPERTY RE:
                             501 DELAMERE WAY, LAS VEGAS NV
10                           89123

11              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SAMUEL L. BUFFORD
12          UNITED STATES BANKRUPTCY JUDGE

13  APPEARANCES:

14  For the Movant:          KEVIN HAHN, ESQ.
                             Malcolm & Cisneros
15                           2112 Business Center Drive
                             Second Floor
16                           Irvine, California 92612
                             (949) 252-9400

17

    Court Recorder:          Christelle Knox
18                           United States Bankruptcy Court
                             Edward R. Roybal Federal
19                            Building
                             255 East Temple Street
20                           Los Angeles, California 90012

21  Transcriber:             Jordan Keilty
                             Echo Reporting, Inc.
22                           6336 Greenwich Drive, Suite B
                             San Diego, California 92122
23                           (858) 453-7590

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

*Echo Reporting, Inc.*

1

<u>1    LOS ANGELES, CALIFORNIA TUESDAY, SEPTEMBER 23, 2008 9:30</u>

2                              --oOo--

3        (Call to order of the Court.)

4              THE COURT:  That brings us to number one, Kang Jin

5    Hwang.

6              MR. HAHN:  Kevin Hahn again for the moving party.

7              THE COURT:  Okay.  Sir, I've already issued a

8    decision in this matter before you filed your brief, and so

9    I take it that the brief is in the nature of a motion to

10   reconsider.  Should we consider it in that status?

11             MR. HAHN:  Well, your Honor, my understanding from

12   the prior hearing was that we had an opportunity to brief

13   the issue of being the real party in interest, and the Court

14   gave us until September 16th, a week before this hearing, to

15   file that brief.  And so that's what we went ahead and did.

16             THE COURT:  Sir, shall I take as in substance a

17   motion for reconsideration or shall I simply deny it?  Maybe

18   you'd like to have it considered as a motion for

19   reconsideration so that I can give due consideration to what

20   you're -- what you raised in the brief.

21             MR. HAHN:  That's fine, your Honor.

22             THE COURT:  Okay.  Very well.  I think I

23   understand part A of the brief, sir.  What weight should I

24   give to the comment to section -- to the commercial --

25   California Commercial Code Section 3301?  It also includes -

2

1  - it, referring to "person entitled to enforce" an

2  instrument -- also includes any other person who under

3  applicable law is a successor to the holder or otherwise

4  acquires the holder's rights.

5          MR. HAHN:  I don't understand the question, your

6  Honor.

7          THE COURT:  That's -- I quoted to you a comment

8  from the Uniform Commercial Code drafters to the revision of

9  Section 3301, and that's what does it mean and what weight

10 should I give to it.

11         MR. HAHN:  I don't -- I don't see the problem with

12 that, your Honor.  I mean, I don't know what the Court's

13 getting at in terms of --

14         THE COURT:  Does that --

15         MR. HAHN:  -- that definition.

16         THE COURT:  -- mean that we have the wrong party

17 before the Court?

18         MR. HAHN:  That's not how I understood it, your

19 Honor.

20         THE COURT:  How did you understand this sentence,

21 sir?

22         MR. HAHN:  I don't have that in front of me, your

23 Honor.  So I took that as any successor could bring the

24 motion.  I'd have to take a close look at it, your Honor.  I

25 don't have it in front of me.

*Echo Reporting, Inc.*

3

1          THE COURT:  It doesn't say any successor.  It says

2    who under applicable law is a successor to the holder or

3    otherwise acquires the holder's rights.  That would seem to

4    be Freddie Mac in this case or its successor.

5          MR. HAHN:  Does that --

6          THE COURT:  We don't even know -- we have no

7    evidence at all as to whether Freddie Mac holds any interest

8    in the mortgage at this time.  It likely doesn't.  It's not

9    it business to hold instruments.  It resells them.

10          MR. HAHN:  Does that section preclude other

11   parties from bringing actions, your Honor?  I don't --

12          THE COURT:  I don't know, sir.

13          MR. HAHN:  It --

14          THE COURT:  That's what I was hoping you would

15   give me enlightenment on.

16          MR. HAHN:  It seems to be a broader definition

17   rather than a more narrow definition of who could bring

18   actions or enforce their claims.

19          THE COURT:  Actually, I think I misspoke here,

20   sir.  The it includes seems to refer to the previous

21   sentence, a non-holder in possession of an instrument.

22   Well, it's hard to say -- includes a person that acquired

23   rights of the holder by subrogation or under Section

24   3203(a).

25          There's another provision in 3301, sir, that I

4

1  don't see that you've addressed -- 3201 rather.  This is

2  3201, negotiation defined, subsection (b):

3             "Except for negotiation by remitter, if

4             an instrument is payable to an

5             identified person, negotiation requires

6             transfer of possession of the instrument

7             and endorsement by the holder.

8             What is a remitter in that provision?

9             MR. HAHN:  I don't know, your Honor.  I'd have to

10 take a look at it.

11            THE COURT:  What authority does the Movant here

12 have from Freddie Mac to proceed in this matter?

13            MR. HAHN:  Your Honor, as our brief laid out, Indy

14 Mac is the holder of the note.  At least that's how we

15 understand it, and on that basis they have the right and

16 perhaps they might be the only party to have the right to

17 proceed.

18            THE COURT:  Did I ask as to Indy Mac?  I misspoke,

19 sir.  What I wanted to ask about is what authorization does

20 the Movant have to act on behalf of Freddie Mac?

21            MR. HAHN:  They have the rights under the note and

22 deed of trust.

23            THE COURT:  Who does?

24            MR. HAHN:  The FDIC as the conservator for Indy

25 Mac, Indy Mac Federal Bank, what's now known as Indy Mac

5

1  Federal Bank.

2       THE COURT:  What rights does Freddie Mac have

3  then?

4       MR. HAHN:  They --

5       THE COURT:  And your witness testified that the

6  note was sold to Freddie Mac.

7       MR. HAHN:  Yes, your Honor, but the witness also

8  testified that Indy Mac --

9       THE COURT:  If you sell a car to Freddie Mac, sir,

10 then Freddie Mac is the owner and has all of the rights of

11 an owner, including a right to defend its ownership

12 interest.

13      MR. HAHN:  Well, your Honor, the Commercial Code

14 seems to make the distinction between what an owner can do

15 and what the holder of the note can do.  In this case, the

16 moving party is the holder of the note, and according to the

17 Commercial Code, they should be entitled to enforce their

18 claim.

19      THE COURT:  What is the point then of subpart (b)

20 to your brief, sir?

21      MR. HAHN:  Excuse me, your Honor, subpart --

22      THE COURT:  What's the point of subpart (b)

23 starting on page nine.  If your position is that Indy Mac is

24 the holder and the one entitled to enforce, then I don't

25 understand what subpart (b) is about.

6

1        MR. HAHN:  Well, your Honor, that's an alternative

2   argument.  I mean, it -- the moving party is Indy Mac or

3   Indy Mac -- the Federal FDIC as a conservator -- Indy Mac

4   for short -- is the proper party to bring it, your Honor, if

5   viewed in light of who is the holder of the note.

6   Alternatively, if the Court seeks to view Indy Mac solely as

7   the agent, they have the authority based on case law to

8   bring this action as well, your Honor.

9        THE COURT:  What case law gives Indy Mac authority

10  to act on Freddie Mac, sir, to act on behalf of Freddie Mac?

11        MR. HAHN:  Well, your Honor, we cited a Supreme

12  Court case, stated in our briefs, <u>Spring Communications v.</u>

13  <u>APCC Services</u>.

14        THE COURT:  And I don't see how that's relevant,

15  sir.  This is a problem that I'm trying -- trying to get

16  some elucidation on.  That referred to an agent for

17  collection, and there was -- apparently there was evidence

18  in that case that the party involved was an agent for

19  collection.  I don't seem to have any evidence that your

20  client is an agent for collection here.

21        MR. HAHN:  Well, your Honor, you do have the

22  testimony of the witness who stated as such.  If -- if the

23  Court sees -- chooses to see Indy Mac as nothing more than

24  the agent.

25        THE COURT:  That was just a legal conclusion, sir.

*Echo Reporting, Inc.*

7

1  We don't seem to have any evidence of agency.

2          MR. HAHN:  Your Honor, I --

3          THE COURT:  Freddie Mac wouldn't do business like

4  this without having a document to authorize Indy Mac to act

5  on its behalf, would it?

6          MR. HAHN:  I don't believe so, your Honor.  They

7  haven't authorized us to divulge that.

8          THE COURT:  Who hasn't authorized you, sir?

9          MR. HAHN:  Freddie Mac hasn't, nor has Indy Mac.

10 It is something if the Court desires we can try to -- try to

11 get for you, but it isn't something that we have.

12         THE COURT:  I think the time to do the trying,

13 sir, was several months ago.

14         MR. HAHN:  Well, your Honor, their position has

15 always been that Indy Mac is the proper party to bring this

16 -- this motion.

17         THE COURT:  So you're abandoning part (b)?

18         MR. HAHN:  Your Honor, our first argument would be

19 part (a), that Indy Mac Visa is a holder of the note and the

20 proper party to bring the motion.

21         THE COURT:  Anything further, sir?

22         MR. HAHN:  No, your Honor.

23         THE COURT:  Very well.  The matter has been

24 submitted.  Thank you, sir.

25         MR. HAHN:  Your Honor, is there a time frame in

8

1 | which I can expect a decision?

2 | THE COURT: I can't say for sure, sir.

3 | (Proceedings concluded.)

4

5

6

7 | I certify that the foregoing is a correct

8 | transcript from the electronic sound recording of the

9 | proceedings in the above-entitled matter.

10

11 | _Jordan Keilley_ _____ _12-19-08_ ___
   | Transcriber          Date

12

13 | FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

14 | _L.L. Francisco, President_
   | L.L. Francisco, President

15 | Echo Reporting, Inc.

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

<u>PROOF OF SERVICE</u>

I am employed by the law firm of Malcolm ♦ Cisneros in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2112 Business Center Drive, Second Floor, Irvine, California 92612.

On June 16, 2010, I caused to be served the document entitled:

**APPELLANT FDIC'S APPENDIX AND EXCERPTS OF RECORD**

on the following interested parties:

**SEE ATTACHED PAGE**

☒ (By Mail) I caused each envelope, with postage prepaid, to be placed in the United States mail at Irvine, California.

☐ (By Hand) I caused each envelope to be delivered by hand.

☐ (By Overnight Courier) I caused each envelope, with postage prepaid, to be sent by Federal Express/ Express Mail.

☐ (By Facsimile Transmission) I caused each document to be sent by automatic facsimile transmission to the following telephone numbers and confirmed by voice communication that the transmission was received:

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction service was made and that the foregoing is true and correct and that this declaration was executed on the date indicated below at Irvine, California.

DATED: June 16, 2010

MICHELLE OCHOA

MO\IMB

1

SERVICE LIST
**In re Kang Jin Hwang**
**District Court Case No. CV 08-7871 PSG**
**(BK CASE No. 2:08-bk-15337-SB)**

**DEBTOR:**
**Kang Jin Hwang**
1635 4th Street
Los Angeles, CA 90019

**DEBTOR'S ATTORNEY:**
**Robert K Lee**
3435 Wilshire Blvd Ste 2741
Los Angeles, CA 90010

**TRUSTEE:**
**Sam S. Leslie**
Leslie, Engell & Associates LLP
6310 San Vicente Blvd., Suite 320
Los Angeles, CA 90048

**U.S. TRUSTEE:**
Department of Justice
725 South Figueroa Street
26th Floor
Los Angeles, CA 90017

MO\IMB